UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA
               :

   - v. -
               :

RUDY KURNIAWAN,
   a/k/a "Dr. Conti,"
   a/k/a "Mr. 47,"
               :

          Defendant.
               :

- - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 09 2012

INDICTMENT

12 Cr.

# 12 CRIM 376

## COUNT ONE
### (Mail Fraud – Scheme to Sell Counterfeit Wine)

The Grand Jury charges:

### Relevant Persons and Entities

1.   At all times relevant to this Indictment, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, at all times relevant to this Indictment, resided in Arcadia, California.  Between at least in or about 2004 up to and including in or about February 2012, KURNIAWAN rose to become one of the most prominent and prolific dealers in the United States of purportedly rare and expensive wine. KURNIAWAN gained stature as a wine collector, and otherwise ingratiated himself with wealthy wine collectors by, among other ways, providing collectors with tastings of his purportedly rare and expensive wines, holding himself out as a knowledgeable wine taster and



evaluator, and flaunting his alleged expertise at detecting counterfeit bottles of rare and expensive wines.

Overview of the Scheme

2.   From in or about 2004, up to and including in or about February 2012, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, engaged in a systematic scheme to defraud wine collectors and others by selling and attempting to sell numerous counterfeit bottles of purportedly rare and expensive wine.

3.   In furtherance of his scheme, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, manufactured and attempted to manufacture counterfeit bottles of rare and vintage wine at his home, operating what was, in effect, a counterfeit wine laboratory.  Among other things, KURNIAWAN mixed and blended lower-priced wines so that they would mimic the taste and character of rare and far more expensive wines; KURNIAWAN poured his creations into empty bottles of rare and expensive wines that he procured from, among other places, a restaurant in New York City; and KURNIAWAN created a finished product by sealing the bottles with corks and by outfitting the bottles with counterfeit wine labels, including labels he created or helped create using stencils and rubber stamps, among other things.  KURNIAWAN then sold these counterfeit bottles of wine at auction and in direct sales to wealthy wine collectors --

often selling the counterfeit wines alongside genuine bottles of rare and vintage wines so that his fraud would go undetected and so that he could dismiss, as spoiled bottles or aberrations, any bottles of wine ultimately identified as counterfeits.

<u>Creating the Counterfeit Wines</u>

4.   In furtherance of his scheme to defraud, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, created and/or assisted in the creation of counterfeit wines, at least at his own home in Arcadia, California.  To manufacture the counterfeit wines, KURNIAWAN employed different techniques, and availed himself of counterfeiting tools and materials, including the following:

a.   <u>Lower Quality Wines</u>: KURNIAWAN obtained bottles of newer, less-expensive wines so that they could be mixed with one another – or with older wines from less valuable vintages – in order to create a wine that mimicked the taste, color and character of rare and expensive wines.  For example, KURNIAWAN obtained a relatively recent bottle of wine from California's Napa Valley, one worth approximately $100, so that it could be used to create an expensive bottle of Bordeaux wine from the 1940's to 1960's vintages of the Pomerol or Graves regions in Bordeaux, France; indeed, in his home KURNIAWAN even marked the bottle of Napa Valley wine with the notation, "40s-60s Pomerol/Graves."  By way of another example, KURNIAWAN obtained

3

a relatively recent bottle of California pinot noir, one worth approximately $250, so that it could be used to create an expensive bottle of wine from the 1940's to 1950's vintages of Domaine de la Romanée-Conti, the most highly regarded winery in Burgundy, France; KURNIAWAN even marked the bottle of California pinot noir, "40s/50s DRC." "DRC" is a commonly used abbreviation for Domaine de la Romanée-Conti.

b. <u>Empty Bottles</u>: KURNIAWAN procured empty bottles of genuine rare and expensive wine so that he could recycle them for use as part of his fraudulent counterfeit wine scheme. For example, on multiple occasions between 2004 and 2006, KURNIAWAN received, via Federal Express, empty bottles of rare and expensive wines from a restaurant in New York, New York.

c. <u>Counterfeit Wine Labels</u>: KURNIAWAN created and maintained thousands of counterfeit labels for rare and expensive wines spanning from at least the 1899 vintage to more modern vintages from the Bordeaux, Burgundy, and Rhone regions in France. Among the labels that KURNIAWAN manufactured and/or used were labels for bottles of wine manufactured at prestigious wineries including Château Lafite Rothschild, Château Mouton Rothschild, Château Latour, Château Margaux, Château Haut Brion, Château Cheval Blanc, Château Pétrus, Château Lafleur, Domaine de la Romanée-Conti, Domaine Ponsot, Domaine G. Roumier, and Domaines Paul Jaboulet Aîné. To create these counterfeit labels,

4

KURNIAWAN possessed and/or used a computer, a laser printer, hundreds of rubber stamps, including vintage stamps for labels, such as stamps for Chateau Latour vintages 1899 and 1900 and Screaming Eagle vintage 1992, as well as stamps for serial numbers.  KURNIAWAN also kept and maintained notes and instructions for manufacturing counterfeit wine labels.  For example, KURNIAWAN kept notes on how to create a counterfeit label of 1962 Domaine Ponsot Clos de la Roche as well as notes on how to create labels for Domaine de la Romanée-Conti. KURNIAWAN also possessed and/or used various importer strips and stickers that are found on authentic bottles.

      d.   <u>Corks and Other Finishes</u>:  To complete the counterfeiting process, KURNIAWAN possessed and/or used a mechanical device for inserting corks into bottles of wine, and maintained stockpiles of hundreds of used corks for various wines, as well as bags of unused corks to be inserted into the counterfeit bottles.  To seal the bottles, KURNIAWAN also possessed and/or used foil capsules and hardened wax that, when heated, could be used to seal the top of a wine bottle. KURNIAWAN also possessed stencils to imprint words on the wooden crates that accompany some fine wines so that even the crates themselves could be passed off as original and authentic.

### Selling the Counterfeit Wines

5.   RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, sold millions of dollars of counterfeit wines, including the wines he had manufactured, both at auction and in private sales to wine collectors.  For example, in furtherance of his fraudulent scheme, KURNIAWAN sold counterfeit wine on multiple occasions, including at least four auctions conducted by an auction house located in Manhattan, New York ("New York Auction House"), and for which catalogues advertising KURNIAWAN's purportedly authentic wines were mailed from the auction house to customers in Manhattan, New York and elsewhere in the months leading up to the auctions.  Specifically, KURNIAWAN sold counterfeit wine at auctions that the New York Auction House conducted in or about May 2005, January 2006, October 2006, and April 2008.  KURNIAWAN further attempted to sell counterfeit wines at an auction in London, England in February 2012.  Finally, KURNIAWAN also sold counterfeit wines directly to wine collectors, including to a New York wine collector located in Manhattan, New York ("New York Collector") in or about 2006.

6.   May 2005 Auction: On or about May 25, 2005, the New York Auction House conducted an auction that included sales of wines consigned for auction by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant.  At this auction, a

6

certain wine collector from Florida ("Florida Collector")
purchased a purported double-magnum of 1947 Chateau Petrus for
$30,000 that KURNIAWAN had consigned for auction and that
KURNIAWAN had represented to be a genuine and authentic bottle
of wine.  In truth and in fact, and as KURNIAWAN well knew, the
wine was counterfeit.

   7. <u>January 2006 Auction</u>: On or about January 27, 2006,
the New York Auction House conducted an auction that included
sales of wines consigned for auction by RUDY KURNIAWAN, a/k/a
"Dr. Conti," a/k/a "Mr. 47," the defendant.  At this auction,
the Florida Collector purchased a purported bottle of 1934
Domaine de la Romanée-Conti Romanée-Conti for $12,925 that
KURNIAWAN had consigned for auction and that KURNIAWAN had
represented to be a genuine and authentic bottle of wine.  In
truth and in fact, and as KURNIAWAN well knew, the bottle was
counterfeit.  Also at this auction, the New York Collector
purchased six bottles of what purportedly was 1962 Domaine G.
Roumier Bonnes Mares for $28,955 as well as ten bottles of what
purportedly was 1947 Château Cheval Blanc for $48,260.
KURNIAWAN had consigned these bottles for auction and had
represented them to be genuine and authentic. In truth and in
fact, and as KURNIAWAN well knew, these wines were counterfeit.

   8. <u>October 2006 Auction</u>: On or about October 20, 2006,
the New York Auction House conducted an auction that included

sales of wines consigned for auction by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant.  At this auction, the New York Collector purchased a jeroboam of 1962 Domaine de la Romanée-Conti Romanée-Conti for $48,259 that KURNIAWAN had consigned for auction and that KURNIAWAN had represented to be a genuine and authentic bottle of wine.  In truth and in fact, and as KURNIAWAN well knew, the wine was counterfeit.

9.  <u>April 2008 Auction</u>:  In or about June 2007, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, consigned at least 97 bottles of wine purportedly from Domaine Ponsot, a highly acclaimed winery in Burgundy, France, to the New York Auction House.  Those bottles were scheduled to be auctioned on or about April 25, 2008 in New York, New York, but the wines were withdrawn just prior to the auction.  The low estimate for the 97 bottles of Domaine Ponsot wine was $440,500 and the high estimate was $602,000.

10.  Although RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, had represented that all the bottles were genuine and authentic, in truth and in fact, and as KURNIAWAN well knew, at least 84 of the 97 bottles of the Domaine Ponsot wines were counterfeit.  That the bottles were counterfeit was clear from, among other things:  several of the bottles had incorrect and inconsistent labels that would not have been present on genuine bottles; some of the bottles purportedly came

from vineyards and vintages that pre-date Domaine Ponsot's production of that particular wine; and one of the bottles purported to have been bottled at Domaine Ponsot in 1929, but Domaine Ponsot did not begin bottling at Domaine Ponsot until 1934.

11. <u>February 2012 Auction</u>: From in or about December 2011 up to and including in or about February 2012, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, attempted to sell wines at an auction to be held on February 8, 2012 in London, England by a certain California company and a British company ("London Auction"). Rather than consign the wines for auction directly, KURNIAWAN – who had by then come under scrutiny for selling counterfeit wine – attempted to sell the wines through a nominee ("Nominee"). KURNIAWAN consigned the wines through the Nominee in order to conceal his own association with the wines consigned for the London Auction and to advance his lucrative counterfeit wine scheme.

12. Through the Nominee, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, consigned dozens of bottles of wine purportedly from Domaine de la Romanée-Conti and Domaine Comte Georges de Vogüé at the London Auction. For example, one bottle of wine, Lot 94, was described in a catalogue mailed to potential bidders, including bidders in Manhattan, New York, as a magnum of "Domaine de la Romanée-Conti

Romanée Conti 1978 Vosne Romanée, Grand Cru" ("Lot 94"). Lot 94 was estimated to sell for $10,000.  In truth and in fact, and as KURNIAWAN well knew, many of the wines consigned through the Nominee were counterfeit, including Lot 94.  For example, the importer strip on the bottle in Lot 94 contains a misspelling that does not appear on authentic bottles.  Other bottles had additional inconsistencies in labeling that would not appear on authentic bottles of the wine described in the catalogue.

13.    Just prior to the London Auction, the auctioneers withdrew 20 lots of wine, estimated to sell for a combined $889,750, that were consigned by the Nominee but in truth and fact were wines owned by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, and in truth and in fact many were counterfeit.

14.    Direct Sales to Collectors: RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, also sold counterfeit wines directly to wine collectors.  For example, on or about September 27, 2006, KURNIAWAN directly sold counterfeit wines to the New York Collector.  The New York Collector also purchased two bottles of 1900 Château Margaux for $12,000 from KURNIAWAN that KURNIAWAN had represented to be genuine and authentic bottles of wine.  In truth and in fact, and as KURNIAWAN well knew, the bottle was counterfeit.

Statutory Allegation

15.   From in or about 2004, up to and including February
2012, in the Southern District of New York and elsewhere, RUDY
KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, to wit, KURNIAWAN consigned wines
for sale at auctions and sold wine directly that KURNIAWAN knew
was counterfeit, for the purpose of executing such scheme and
artifice and attempting to do so, placed and caused to be placed
in a post office and authorized depository for mail matter,
matters and things to be sent and delivered by the Postal
Service, and deposited and caused to be deposited matters and
things to be sent and delivered by private and commercial
interstate carriers, and knowingly caused such matters and
things to be delivered by mail and by such carriers according to
the directions thereon and at the places at which it was
directed to be delivered, to wit, KURNIAWAN caused catalogues
containing descriptions of the counterfeit wines to be mailed
from and into New York, New York; KURNIAWAN caused empty bottles
of rare and expensive wine to be mailed from New York, New York;
and KURNIAWAN caused counterfeit wines to be mailed and
transported by interstate carrier to Mamaroneck, New York.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
### (Wire Fraud - Scheme to Defraud a Finance Company)

16.   The allegations contained in Paragraphs 1 through 14 are repeated and realleged as if fully stated herein.

17.   From on or about November 28, 2007, up to and including on or about February 28, 2008, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, devised and implemented a scheme to fraudulently obtain a $3 million loan from a New York financing company located in Manhattan, New York ("the Finance Company") that specialized in extending loans that are secured by valuable collectibles, such as art and wine. KURNIAWAN obtained the $3 million loan by means of false and fraudulent statements and material omissions made to the Finance Company, including but not limited to:  (i) falsely omitting from his loan application approximately $11,485,056.20 of outstanding personal loans; (ii) falsely representing to the Finance Company that he spent annually approximately $150,000, when in truth and fact, KURNIAWAN spent millions of dollars a year; and (iii) falsely representing that he was a permanent resident of the United States who was applying for a green card when, in fact, KURNIAWAN had no legal immigration status in the United States and had, in fact, been ordered by an Immigration court to leave the United States years earlier.

12

Statutory Allegation

18.   From on or about November 28, 2007, up to and
including on or about February 28, 2008, in the Southern
District of New York and elsewhere, RUDY KURNIAWAN, a/k/a "Dr.
Conti," a/k/a "Mr. 47," the defendant, willfully and knowingly,
having devised and intending to devise a scheme and artifice to
defraud, and for obtaining money or property by means of false
and fraudulent pretenses, representations, and promises, did
transmit and cause to be transmitted by means of wire, radio,
and television communication in interstate and foreign commerce,
writings, signs, signals, pictures, and sounds for the purpose
of executing such scheme and artifice, to wit, KURNIAWAN engaged
in a scheme to defraud the Finance Company in connection with a
$3 million loan application by means of false statements and
material omissions, and in furtherance of that scheme, KURNIAWAN
caused interstate telephone calls and interstate wire transfers
to be made from New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT THREE**
**(Wire Fraud – Scheme to Double Pledge Collateral)**

19.   The allegations contained in Paragraphs 1 through 14
and 17 are repeated and realleged as if fully stated herein.

13

## Overview of the Scheme

20.   RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, devised and implemented a scheme to defraud the New York Auction House and the Finance Company by double-pledging certain collateral to secure loans KURNIAWAN had procured from both of those victims.  In or about January 2008, KURNIAWAN pledged 25 works of art as collateral to obtain the $3 million loan from the Finance Company discussed in paragraph 17 above. In or about May 2008, in furtherance of the scheme to defraud, KURNIAWAN pledged 18 of the same 25 works of art to the New York Auction House, without the knowledge or consent of either victim.  After KURNIAWAN defaulted on the loan from the Finance Company, there was insufficient collateral to make both the Finance Company and the New York Auction House whole, and the New York Auction House was deprived of millions of dollars of collateral.

### KURNIAWAN Pledged 25 Works of Art to the Finance Company

21.   On or about January 18, 2008, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, and the Finance Company entered into a Security Agreement in connection with the $3 million loan discussed in paragraph 17.  Under the terms of the Security Agreement, KURNIAWAN was required to pledge certain collateral, including 25 works of art (the "Works"), for the $3 million loan.  KURNIAWAN pledged in the Security Agreement that

he would not "(i) sell, assign (by operation of law or otherwise), exchange or otherwise dispose of any of the Collateral without [the Finance Company's] written consent, or (ii) incur, create, assume or suffer to exist any lien, directly or indirectly, upon or with respect to any of [KURNIAWAN's] right, title or interest in or to any of the [Works] except for the security interest created by this Security Agreement."

22.   The Works that RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, pledged as collateral to the Finance Company in the Security Agreement included valuable paintings and other works of art from artists such as Andy Warhol and Damien Hirst.

KURNIAWAN Double-Pledged 18 of the
Works to the New York Auction House

23.   In furtherance of the scheme to defraud, on or about May 2, 2008, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, signed a Security Agreement with the New York Auction House to secure millions of dollars of loans that the New York Auction House had extended to KURNIAWAN.  The Security Agreement granted the New York Auction House a security interest in KURNIAWAN's wine collection and 18 of the 25 Works that KURNIAWAN had previously pledged to the Financing Company. KURNIAWAN falsely represented to the New York Auction House in the Security Agreement that KURNIAWAN would keep the pledged

collateral "free of all liens and claims whatsoever" and to "not sell, transfer, lease, or otherwise dispose of any collateral or any interest therein, except with [the New York Auction House's] prior written consent."

24.  On or about November 5, 2008, the Financing Company sent RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, a default notice on the $3 million dollar loan.  That letter cited two bases for default.  First, KURNIAWAN pledged 18 of the Works to the New York Auction House that were previously pledged to the Finance Company, in violation of the Security Agreement.  Second, KURNIAWAN had failed to make the scheduled installment payment of $83,333 that was due on the $3 million loan.

25.  As a result of the double-pledging, the Finance Company sold several of the Works and the $3 million loan was repaid from those proceeds.  The New York Auction House, however, was deprived of at least $3 million in collateral that went towards repaying the Finance Company.  On or about November 23, 2008, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, signed an Affidavit in which he confessed judgment in favor of the New York Auction House for $10,401,655.06 stemming from KURNIAWAN's default on millions of dollars of loans.

Statutory Allegation

26.   From on or about January 18, 2008, up to and including
on or about May 2, 2008, in the Southern District of New York
and elsewhere, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr.
47," the defendant, willfully and knowingly, having devised and
intending to devise a scheme and artifice to defraud, and for
obtaining money and property by means of false and fraudulent
pretenses, representations, and promises, did transmit and cause
to be transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, to wit, KURNIAWAN devised
and implemented a scheme to defraud the Finance Company and the
New York Auction House by double pledging 18 of the Works,
without the prior knowledge and consent of the Finance Company
and the New York Auction House, and in furtherance of the
scheme, KURNIAWAN caused an interstate facsimile to be sent from
California to New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

17

## COUNT FOUR
### (Wire Fraud - Scheme to Defraud a California Collector and the New York Auction House)

27.   The allegations contained in Paragraphs 1 through 14, Paragraph 17, and Paragraphs 20 through 25 are repeated and realleged as if fully stated herein.

### Overview

28.   From in or about 2007 up to and including September 12, 2009, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, devised and implemented a scheme to defraud the New York Auction House and a California wine collector (the "California Collector") by pledging to each of them an unencumbered interest in certain wines to be sold at auction. As a result of KURNIAWAN's scheme, neither the New York Auction House nor the California Collector received all of the auction proceeds, even though KURNIAWAN had previously pledged to each of them a full and unencumbered interest in the wines.

### KURNIAWAN's 2008 Agreements with the New York Auction House

29.   RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, entered into three separate agreements with the New York Auction House on or about May 2, 2008, on or about November 7, 2008, and on or about November 22, 2008, in which KURNIAWAN agreed not to transfer or sell any portion of his wine collection without the written consent of the New York Auction

18

House.  The three agreements were intended to provide security for millions of dollars of loans extended by the New York Auction House to KURNIAWAN.

### KURNIAWAN Pledged Proceeds from the Sale of Certain Wines to the California Collector

30.  In furtherance of the scheme to defraud, on or about August 8, 2009, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, and the California Collector executed an agreement with the California Collector whereby KURNIAWAN agreed to consign wines from KURNIAWAN's personal wine collection to pay a $2.3 million debt that KURNIAWAN owed to the California Collector.  The $2.3 million debt arose from wines that KURNIAWAN sold to the California Collector in or about 2007 that the California Collector subsequently wanted to return to KURNIAWAN because of concerns over the authenticity of the wines.

31.  RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, defrauded the New York Auction House and the California Collector by double pledging wines to both victims. KURNIAWAN falsely represented to the California Collector that KURNIAWAN had good and marketable title to the pledged wines and that the pledged wines were free of any encumbrances.  KURNIAWAN also falsely represented that he had obtained any necessary approvals to pledge the wines to the California Collector.

32.  RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, did not disclose to the California Collector that KURNIAWAN had granted the New York Auction House a security interest in his wine collection in three agreements that KURNIAWAN entered into in 2008.  KURNIAWAN neither sought nor received the New York Auction House's permission to sell any of the wines or to pledge any of this wines as security to the California Collector.

### KURNIAWAN's Consignment of the Pledged Wines

33.  On or about July 28, 2009, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, entered into a consignment agreement with an international auction house (the "International Auction House") to sell some of KURNIAWAN's wines to pay the California Collector.  In furtherance of the scheme, KURNIAWAN falsely represented to the International Auction House that KURNIAWAN had "the right and title to consign the Property [i.e., the consigned wines] for sale, (ii) the Property is, and until the completion of sale by [the International Auction House] . . . will be free and clear of all liens, claims and encumbrances of others or restrictions on [the International Auction House's] . . . right to offer and sell the Property . . . . ."

34.  The auction was held on or about September 12, 2009 and the proceeds from the auction were approximately $691,150.

As a result of the scheme devised and implemented by RUDY
KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant,
neither the New York Auction House nor the California Collector
received all of the $691,150 in proceeds from the auction.
Instead, the New York Auction House and the California Collector
split the auction proceeds evenly, even though KURNIAWAN had
previously pledged to each of them a full and unencumbered
interest in the wines.

<u>Statutory Allegation</u>

35.  From in or about 2007 up to and including September
12, 2009, in the Southern District of New York and elsewhere,
RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the
defendant, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money or property by means of false or fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, to wit, KURNIAWAN devised
and implemented a scheme to defraud the New York Auction House
and the California Collector by double pledging wines to both
the New York Auction House and the California Collector, and as
a result of the scheme both the California Collector and the New

York Auction House were deprived of the full proceeds from the auctioned wines, and in furtherance of the scheme, KURNIAWAN caused an interstate facsimile to be sent from California to New York, New York and an interstate email to be sent from New York, New York to California.

(Title 18, United States Code, Sections 1343 and 2.)

## FIRST FORFEITURE ALLEGATION

36.  As the result of committing the criminal offense in violation of Title 18, United States Code, Sections 1341 and 2, alleged in Count One of this Indictment, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

## Substitute Asset Provision

37.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with a third person;

(3)  has been placed beyond the jurisdiction of the Court;

22

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1341 and 2;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

### SECOND FORFEITURE ALLEGATION

38.   As the result of committing the criminal offenses in

violation of Title 18, United States Code, Sections 1343 and 2,

alleged in Counts Two through Four of this Indictment, RUDY

KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant,

shall forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and

personal, that constitutes or is derived from proceeds traceable

to the commission of the offense.

### Substitute Asset Provision

39.   If any of the above-described forfeitable property, as

a result of any act or omission of the defendant:

(6)   cannot be located upon the exercise of due
diligence;

(7)   has been transferred or sold to, or deposited
with a third person;

(8)   has been placed beyond the jurisdiction of the
Court;

23

(9)   has been substantially diminished in value; or

(10) has been commingled with other property which
          cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1341 and 2;
       Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON

PREET BHARARA
United States Attorney

24

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

### - v. -

### RUDY KURNIAWAN,
### a/k/a "Dr. Conti,"
### a/k/a "Mr. 47,"

### Defendant.

---

### INDICTMENT

(18 U.S.C. §§ 1341, 1343, & 2.)

---

PREET BHARARA
United States Attorney.

**A TRUE BILL**

*Kathleen Surick*

Foreperson.

---

5/9/12 - Filed Indictment. Case assigned to Judge Berman.

*Judge Maas*
*U.S. M.J.*