UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                          :
UNITED STATES OF AMERICA
                          :
       - v. -
                          :
RUDY KURNIAWAN,
    a/k/a "Dr. Conti,"
    a/k/a "Mr. 47,"
                          :
             Defendant.
                          :
- - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 0 8 2013

SUPERSEDING
INDICTMENT

S1 12 Cr. 376 (RMB)

## COUNT ONE
### (Mail Fraud - Scheme to Sell Counterfeit Wines)

      The Grand Jury charges:

### Relevant Persons and Entities

    1.  At all times relevant to this Indictment, RUDY
KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant,
resided in Arcadia, California. Between at least in or about
2004 up to and including in or about February 2012, KURNIAWAN
rose to become one of the most prominent and prolific dealers in
the United States of purportedly rare and expensive wine.
KURNIAWAN gained stature as a wine collector, and otherwise
ingratiated himself with wealthy wine collectors by, among other
ways, providing collectors with tastings of his purportedly rare
and expensive wines, holding himself out as a knowledgeable wine
taster and evaluator, and flaunting his alleged expertise at
detecting counterfeit bottles of rare and expensive wines.

## Overview of the Scheme

2.    From in or about 2004, up to and including in or about February 2012, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, engaged in a systematic scheme to defraud wine collectors and others by selling and attempting to sell numerous counterfeit bottles of purportedly rare and expensive wine.

3.    In furtherance of his scheme, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, manufactured and attempted to manufacture counterfeit bottles of rare and vintage wine at his home, operating what was, in effect, a counterfeit wine laboratory.  Among other things, KURNIAWAN mixed and blended lower-priced wines so that they would mimic the taste and character of rare and far more expensive wines; KURNIAWAN poured his creations into empty bottles of rare and expensive wines that he procured from various sources; and KURNIAWAN created a finished product by sealing the bottles with corks and by outfitting the bottles with counterfeit wine labels.  KURNIAWAN then sold and attempted to sell these counterfeit bottles of wine at auctions and in direct sales to wealthy wine collectors -- often selling the counterfeit wines alongside genuine bottles of rare and vintage wines so that his fraud would go undetected and so that he could dismiss, as

2

spoiled bottles or aberrations, any bottles of wine ultimately
identified as counterfeits.

Creating the Counterfeit Wines

4.    In furtherance of his scheme to defraud, RUDY
KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant,
created and/or assisted in the creation of counterfeit wines, at
least at his own home in Arcadia, California.   To manufacture
the counterfeit wines, KURNIAWAN employed different techniques,
and availed himself of counterfeiting tools and materials,
including the following:

a.    Lower Quality Wines: KURNIAWAN obtained
bottles of newer, less-expensive wines so that they could be
mixed with one another – or with older wines from less valuable
vintages – to create a wine that mimicked the taste, color and
character of rare and expensive wines.   For example, KURNIAWAN
obtained a relatively recent bottle of California pinot noir,
one worth approximately $250, so that it could be used to create
an expensive bottle of wine from the 1940's to 1950's vintages
of Domaine de la Romanée-Conti, the most highly regarded winery
in Burgundy, France; KURNIAWAN even marked the bottle of
California pinot noir, "40s/50s DRC."   "DRC" is a commonly used
abbreviation for Domaine de la Romanée-Conti.   By way of another
example, Kurniawan purchased large stocks of old, lower quality
wines from Burgundy and Bordeaux for which there is little

demand or appreciation so that KURNIAWAN could use those wines and/or wine bottles to concoct counterfeit wines.

b.   Empty Bottles:  KURNIAWAN procured empty bottles of genuine rare and expensive wines so that he could recycle them for use as part of his fraudulent counterfeit wine scheme.  For example, on multiple occasions between 2004 and 2006, KURNIAWAN received, via Federal Express, empty bottles of rare and expensive wines from a restaurant in New York, New York.

c.   Counterfeit Wine Labels: KURNIAWAN created and maintained thousands of counterfeit labels for rare and expensive wines spanning from at least the 1899 vintage to more modern vintages from the Bordeaux, Burgundy, and Rhone regions in France.  Among the labels that KURNIAWAN manufactured and/or used were labels for bottles of wine manufactured at prestigious wineries including Château Lafite Rothschild, Château Mouton Rothschild, Château Latour, Château Margaux, Château Haut Brion, Château Cheval Blanc, Château Pétrus, Château Lafleur, Domaine de la Romanée-Conti, Domaine Ponsot, Domaine G. Roumier, and Domaines Paul Jaboulet Aîné. To create these counterfeit labels, KURNIAWAN possessed and/or used a computer, a laser printer, hundreds of rubber stamps, including vintage stamps for labels, such as stamps for Chateau Latour vintages 1899 and 1900 and Screaming Eagle vintage 1992, as well as stamps for serial

4

numbers.  KURNIAWAN also kept and maintained notes and instructions for manufacturing counterfeit wine labels.  For example, KURNIAWAN kept notes on how to create a counterfeit label of 1962 Domaine Ponsot Clos de la Roche as well as notes on how to create counterfeit labels for Domaine de la Romanée-Conti.  KURNIAWAN also possessed and/or used various importer strips and stickers that are found on authentic bottles.

        d.   <u>Corks and Other Finishes</u>:  To complete the counterfeiting process, KURNIAWAN possessed and/or used a mechanical device for inserting corks into bottles of wine, and maintained stockpiles of hundreds of used corks for various wines, as well as bags of unused corks to be inserted into the counterfeit bottles.  To seal the bottles, KURNIAWAN also possessed and/or used foil capsules and hardened wax that, when heated, could be used to seal the top of a wine bottle.  KURNIAWAN also possessed stencils to imprint words on the wooden crates that accompany some fine wines so that even the crates themselves could be passed off as original and authentic.

<u>Selling and Attempting to Sell the Counterfeit Wines</u>

        5.   RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, sold and attempted to sell counterfeit wines, including the wines he had manufactured, both at auction and in private sales to wine collectors.  For example, in furtherance of his fraudulent scheme, KURNIAWAN sold counterfeit

wines on multiple occasions, including at least three auctions
conducted by an auction house located in Manhattan, New York
("New York Auction House"), and for which catalogues advertising
KURNIAWAN's purportedly authentic wines were mailed from the
auction house to customers in Manhattan, New York and elsewhere
in the months leading up to the auctions.  Specifically,
KURNIAWAN sold counterfeit wines at auctions that the New York
Auction House conducted in or about January 2006, October 2006,
and April 2008.  KURNIAWAN further attempted to sell counterfeit
wines at an auction in London, England in February 2012.
Finally, KURNIAWAN also sold counterfeit wines directly to wine
collectors, including to a New York wine collector located in
Manhattan, New York ("New York Collector") in or about 2006.

      6.   <u>May 2005 Private Sale</u>: On or about May 25, 2005,
the New York Auction House conducted a private sale that
included sales of wines owned by RUDY KURNIAWAN, a/k/a "Dr.
Conti," a/k/a "Mr. 47," the defendant.  At this auction, a
certain wine collector from Florida ("Florida Collector")
purchased a purported double-magnum of 1947 Chateau Petrus for
$30,000 that KURNIAWAN had consigned for auction and that
KURNIAWAN had represented to be a genuine and authentic bottle
of wine.  In truth and in fact, and as KURNIAWAN well knew, the
wine was counterfeit.

7.    <u>January 2006 Auction</u>: On or about January 27, 2006, the New York Auction House conducted an auction that included sales of wines consigned for auction by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant.  At this auction, the Florida Collector purchased a purported bottle of 1934 Domaine de la Romanée-Conti Romanée-Conti for $12,925 that KURNIAWAN had consigned for auction and that KURNIAWAN had represented to be a genuine and authentic bottle of wine.  In truth and in fact, and as KURNIAWAN well knew, the bottle was counterfeit.  Also at this auction, the New York Collector purchased ten bottles of what purportedly was 1947 Château Cheval Blanc for $48,260.  KURNIAWAN had consigned these bottles for auction and had represented them to be genuine and authentic and caused others to represent them as genuine and authentic. In truth and in fact, and as KURNIAWAN well knew, these wines were counterfeit.

8.    <u>October 2006 Auction</u>: On or about October 20, 2006, the New York Auction House conducted an auction that included sales of wines consigned for auction by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant.  At this auction, the New York Collector purchased a jeroboam of 1962 Domaine de la Romanée-Conti Romanée-Conti for $48,259 that KURNIAWAN had consigned for auction and that KURNIAWAN had represented to be a genuine and authentic bottle of wine.  Also

at this auction, a certain wine collector from New Jersey purchased 6 bottles of 1923 G. Roumier Bonnes Mares for $95,000 that KURNIAWAN had consigned for auction.  KURNIAWAN had consigned these bottles for auction and had represented them to be genuine and authentic and caused others to represent them as genuine and authentic.  In truth and in fact, and as KURNIAWAN well knew, these wines were counterfeit.

9.  April 2008 Auction:  In or about June 2007, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, consigned at least 97 bottles of wine purportedly from Domaine Ponsot, a highly acclaimed winery in Burgundy, France, to the New York Auction House.  Those bottles were scheduled to be auctioned on or about April 25, 2008 in New York, New York, but the wines were withdrawn just prior to the auction.  The low estimate for the 97 bottles of Domaine Ponsot wine was $440,500 and the high estimate was $602,000.

10.  Although RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, had represented that all the bottles were genuine and authentic, and caused others to do the same, in truth and in fact, and as KURNIAWAN well knew, at least 84 of the 97 bottles of the Domaine Ponsot wines were counterfeit. That the bottles were counterfeit was clear from, among other things:  several of the bottles had incorrect and inconsistent labels that would not have been present on genuine bottles; some

of the bottles purportedly came from vineyards and vintages that pre-date Domaine Ponsot's production of that particular wine; and one of the bottles purported to have been bottled at Domaine Ponsot in 1929, but Domaine Ponsot did not begin bottling at Domaine Ponsot until 1934.

11.   February 2012 Auction: From in or about December 2011 up to and including in or about February 2012, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, attempted to sell wines at an auction to be held on February 8, 2012 in London, England by a certain California company and a British company ("London Auction").  Rather than consign the wines for auction directly, KURNIAWAN - who had by then come under scrutiny for selling counterfeit wine - attempted to sell the wines through a nominee ("Nominee").  KURNIAWAN consigned the wines for the London Auction through the Nominee to conceal his own association with the wines and to advance his counterfeit wine scheme.

12.   Through the Nominee, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, consigned dozens of bottles of wine purportedly from Domaine de la Romanée-Conti and Domaine Comte Georges de Vogüé at the London Auction.  For example, one bottle of wine, Lot 94, was described in a catalogue mailed to potential bidders, including bidders in Manhattan, New York, as a magnum of "Domaine de la Romanée-Conti

Romanée Conti 1978 Vosne Romanée, Grand Cru" ("Lot 94"). Lot 94 was estimated to sell for $10,000.  In truth and in fact, and as KURNIAWAN well knew, many of the wines consigned through the Nominee were counterfeit, including Lot 94.  For example, the importer strip on the bottle in Lot 94 contains a misspelling that does not appear on authentic bottles.  Other bottles had additional inconsistencies in labeling that would not appear on authentic bottles of the wine described in the catalogue.

13.    Just prior to the London Auction, the auctioneers withdrew 20 lots of wine, estimated to sell for a combined $889,750, that were consigned by the Nominee but in truth and fact were wines owned by RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, and in truth and in fact many were counterfeit.

14.    Direct Sale of Wine:  In or about September or November 2006, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, knowingly sold a counterfeit bottle of wine, a purported jeroboam of 1945 Château Mouton Rothschild, directly to the New York Collector for $48,259.

## Statutory Allegation

15.    From in or about 2004, up to and including February 2012, in the Southern District of New York and elsewhere, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, willfully and knowingly, having devised and

10

intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and knowingly caused such matters and things to be delivered by mail and by such carriers according to the directions thereon and at the places at which it was directed to be delivered, to wit, KURNIAWAN falsely claimed and caused others to claim that wines he sold, offered for sale, and consigned were particular valuable and rare wines when, in truth and in fact, the wines were not what they purported to be; in furtherance of the scheme to defraud, KURNIAWAN caused to be mailed and/or transported by interstate carrier (i) catalogues for auctions containing descriptions of the counterfeit wines to and from New York, New York, (ii) empty bottles of rare and expensive wines from New York, New York to Arcadia, California, and (iii) counterfeit wines from Arcadia, California to Mamaroneck, New York.

(Title 18, United States Code, Sections 1341 and 2.)

11

## COUNT TWO
### (Wire Fraud – Scheme to Defraud a Finance Company)

16.   The allegations contained in Paragraphs 1 through 14 are repeated and realleged as if fully stated herein.

17.   From on or about November 28, 2007, up to and including on or about May 2, 2008, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, devised and implemented a scheme to fraudulently obtain a $3 million loan from a New York financing company located in Manhattan, New York ("the Finance Company") that specialized in extending loans that are secured by valuable collectibles, such as art and wine.  KURNIAWAN obtained the $3 million loan by means of false and fraudulent statements and material omissions made to the Finance Company, including but not limited to:  (i) falsely omitting from his loan application approximately $11,485,056.20 of outstanding personal loans; (ii) falsely representing to the Finance Company that he spent annually approximately $150,000, when in truth and fact, KURNIAWAN spent millions of dollars a year; and (iii) falsely representing that he was a permanent resident of the United States who was applying for a green card when, in fact, KURNIAWAN had no legal immigration status in the United States and had, in fact, been ordered by an Immigration court to leave the United States years earlier.  In addition, KURNIAWAN defrauded the Finance Company by double-pledging 18 works of art

12

to the New York Auction House that KURNIAWAN had previously pledged to the Finance Company to secure the $3 million loan.

## Statutory Allegation

18. From on or about November 28, 2007, up to and including on or about May 2, 2008, in the Southern District of New York and elsewhere, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, KURNIAWAN engaged in a scheme to defraud the Finance Company in connection with a $3 million loan application by means of false statements, material omissions, and the double-pledging of collateral, and in furtherance of that scheme, KURNIAWAN caused interstate telephone calls and interstate wire transfers to be made from New York, New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FIRST FORFEITURE ALLEGATION

19.   As the result of committing the criminal offense in violation of Title 18, United States Code, Sections 1341 and 2, alleged in Count One of this Superseding Indictment, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the following:

a.   All proceeds derived from the offense;

b.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11782 Southampton Court, Los Angeles, California 90077, more particularly described as: Parcel # 4377-48-11, Tract# 43918 and Lot# 14;

c.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 9638 East Naomi Ave., Arcadia, California 91007, more particularly described as: Parcel# 8383-005-001, Tract# 52901 and Lot# 4;

d.   All wine stored at Pacific Wine Distributors in Irwindale, California, held in the name of the defendant;

e.   The following vehicles:  (1) One 2008 Black Lamborghini, Vin# ZHWBU47S28LA02669; (2) One 2011 Black Mercedez Benz, Vin# WDCYC7BF3BX192524; and (3) One 2008 Land Rover, Vin# SALMH13408A274201;

f.   All right, title, and interest in Etienne & Partners investment in vineyards and wines in Burgundy, France;

g.   All right, title, and interest in the Mozza LLC restaurant group in the amount of $100,000, including any and all dividends issued to the defendant;

h.   All funds on deposit in Wells Fargo Account Number 5488926907;

i.   All right, title, and interest in one Patek Philippe watch purchased from Feel Good Watches in the amount of $55,160.00;

j.   All right, title, and interest in the following purchases from Chong Hing Jewelers totaling in the amount of $688,637.86: (i) One Patek Philippe watch purchased on April 1, 2006, invoice no. 50311, for the amount of $50,000; (ii) One Patek Philippe watch purchased on April 1, 2006, invoice no. 50312, for the amount of $15,000; (iii) One Mikimoto s/s pearl necklace purchased on April 20, 2006, invoice no. 39093, for the amount of $33,600; (iv) One Mont Blanc pen purchased on April 20, 2006, invoice no. 39094, for the amount of $17,945; (v) Two Patek Philippe watches purchased on

September 21, 2006, invoice no. 56897, for the amount of
$332,000; (vi) Three OP Ferrari watch purchased on October 8,
2006, invoice no. 56832, for the amount of $17,916.86; (vii) Two
Patek Philippe watches purchased on October 21, 2006, invoice
no. 57726, for the amount of $28,000; (viii) One pair of 18k
diamond earrings, purchased on October 21, 2006, invoice no.
57725, for the amount of $4,800; (ix) One Omega watch, purchased
on October 22, 2006, invoice no. 57094, for the amount of
$3,300; (x) One OP watch, purchased on October 22, 2006, invoice
no. 57093, for the amount of $4,500; (xi) One Tag Heuer watch,
purchased on December 1, 2006, invoice no. 57893, for the amount
of $2,300; (xii) Two Patek Philippe watches, purchased on June
17, 2007, invoice no. 63293, for the amount of $150,585;(xiii)
One Patek Philippe watch, purchased on February 13, 2007,
invoice no. 55682, for the amount of $7,935; and (xiv) One JLC
and Three JWC watches, purchased on July 21, 2007, invoice no.
62733, for the amount of $54,356;

     k.    All right, title, and interest in the
following artworks:  (i) Todd Eberle: Detail: 100 Untitled Works
in Mill Aluminum by Donald Judd. The Chinati Foundation, Marfa,
Texas, August 1993. 1993 Digital C-Print Edition #2/3; (ii)
Damien Hurst: Acetylnucleic Acid 2006. Household gloss on
canvas; (iii) Damien Hurst: Beautiful, I Pushed The Controls
Ahead of Rockets Blazed, I Don't Want To Be A Dead Artist

Painting, 2005. Household gloss on canvas; and (iv) ZHANG

XIAOGANG: The Sisters (The Grand Family no. 7), 1996 Oil on

Canvas;

l.   All right, title, and interest in purchases

from Christies in the amount of $309,364.94;

m.   All right, title, and interest in purchase

of two chandeliers from John J. Nelson Antiques in the amount of

$259,800; and

n.   All right, title, and interest in purchases

from the Gagosian Gallery in the amount of $760,000.

## Substitute Asset Provision

20.  If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

(1)  cannot be located upon the exercise of due
     diligence;

(2)  has been transferred or sold to, or deposited
     with a third person;

(3)  has been placed beyond the jurisdiction of the
     Court;

(4)  has been substantially diminished in value; or

(5)  has been commingled with other property which
     cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1341 and 2;

Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

## SECOND FORFEITURE ALLEGATION

21.  As the result of committing the criminal offenses in violation of Title 18, United States Code, Sections 1343 and 2, alleged in Count Two of this Superseding Indictment, RUDY KURNIAWAN, a/k/a "Dr. Conti," a/k/a "Mr. 47," the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

### Substitute Asset Provision

22.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with a third person;

(3)  has been placed beyond the jurisdiction of the Court;

(4)  has been substantially diminished in value; or

(5)  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said

18

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1341 and 2;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____   _____
FOREPERSON                    PREET BHARARA
                              United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### RUDY KURNIAWAN,
### a/k/a "Dr. Conti,"
### a/k/a "Mr. 47,"

### Defendant.

### SUPERSEDING INDICTMENT

(18 U.S.C. §§ 1341, 1343, & 2.)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

*Kathleen Suvrik (dy)*
Foreperson.

4/8/13   Filed Superseding Indictment

COTJ, USDJ