UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-- v. --

RUDY KURNIAWAN,
    a/k/a "Dr. Conti,"
    a/k/a "Mr. 47,"

        Defendant.

S1 12 Cr. 376 (RMB)

**GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS**

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

JASON P. HERNANDEZ
JOSEPH P. FACCIPONTI
Assistant United States Attorneys
    *Of Counsel*

## Table of Contents

I.    The Defendant's Motion to Dismiss the Indictment Should Be Denied............................1

   A.  Background Facts.............................................................................................2

        1.  Count One of the S1 Indictment – Wine Counterfeiting Scheme...................3

        2.  Count Two of the S1 Indictment – Scheme to Defraud Fine Art Capital........4

   B.  Argument.......................................................................................................5

        1.  The Indictment Sufficiently Alleges All of the Essential Elements of Mail
            Fraud and Wire Fraud..................................................................................5

            a.  Applicable Law...................................................................................5

            b.  Discussion...........................................................................................7

        2.  The Indictment Is Not Duplicitous...............................................................10

            a.  Applicable Law...................................................................................11

            b.  Discussion...........................................................................................12

                i.  Kurniawan's Right to Be Tried on Charges Presented to the
                    Grand Jury Has Not Been Violated...............................................14

                ii.  The Allegations In the S1 Indictment Are Timely....................15

                iii.  Kurniawan's Other Rights Have Not Been Violated.............17

II.   The Defendant's Motions *In Limine* Should Be Denied....................................18

   A.  Evidence of the Sale of Allegedly Counterfeit Fines Prior to March 2007 is
       Admissible As Evidence of the Scheme to Defraud...........................................19

   B.  The Defendant's Motion to Preclude Evidence of Victims of Count Two Other Than
       Fine Art Capital Should Be Denied as Moot....................................................27

III.  The Defendant's Motion for Rule 404(b) Notice Should Be Denied As Moot...............27

Conclusion.................................................................................................................28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| UNITED STATES OF AMERICA<br><br> -- v. --<br><br>RUDY KURNIAWAN,<br>    a/k/a "Dr. Conti,"<br>    a/k/a "Mr. 47,"<br><br>           Defendant. |

S1 12 Cr. 376 (RMB)

**GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTIONS**

The Government respectfully submits this opposition to the following motions by the defendant, Rudy Kurniawan ("Kurniawan" or "defendant"): (i) the defendant's motion to dismiss the Superseding Indictment in this case [Docket #59]; (ii) motions *in limine* [Docket #64]; and (iii) motion for Rule 404(b) notice [Docket #60]. For the following reasons, each of these motions is meritless and/or moot, and therefore should be denied.

**I.   The Defendant's Motion to Dismiss the Indictment Should Be Denied**

Kurniawan argues that the Superseding Indictment (the "S1 Indictment") should be dismissed for two reasons. *First*, Kurniawan argues that the S1 Indictment fails to allege all of the elements of mail and wire fraud because it fails to identify specific mailings and wires. *Second*, Kurniawan argues that the S1 Indictment is duplicitous; that is, Kurniawan claims that the mail and wire fraud counts have impermissibly grouped multiple mailings and wires into the mail and wire fraud counts, respectively.

Kurniawan's arguments are without any merit. Kurniawan's first argument fails because the S1 Indictment tracks the statutory language, including the allegation that the mails and wires were used in furtherance of each scheme, which is sufficient to defeat a motion to dismiss.

There is simply no case law that supports Kurniawan's claim and abundant authority to contradict it.  An indictment is not required to allege the exact dates of each mailing or wire transmission.  Kurniawan's second argument, that the S1 Indictment is duplicitous, is also baseless because the alleged mailings and wires were all part of a single continuous scheme to defraud the respective victims of Counts One and Two.  Courts in the Second Circuit have routinely upheld indictments that allege multiple mailing or wires in one count.  Kurniawan has failed to show how the alleged defects in the S1 Indictment have prejudiced him.  The Motion should thus be denied.

## A.  Background Facts

On March 5, 2012, Magistrate Judge Ronald L. Ellis signed a 50-page criminal complaint (the "Complaint") charging Rudy Kurniawan in five counts.  Kurniawan was charged with one count of wire fraud for allegedly engaging in a scheme to defraud a Finance Company, (Compl. ¶ 1), and two counts of mail fraud for allegedly engaging in a scheme to sell counterfeit wines, (*id*. ¶¶ 4-5), among other counts.

On May 9, 2012, a grand jury sitting in this District returned an Indictment against Kurniawan.  The Indictment charged Kurniawan in four counts with, among other things, one count of mail fraud for allegedly engaging in a scheme to create and sell counterfeit wines (Ind. ¶¶ 1-15) and one count of wire fraud for allegedly engaging in a scheme to defraud a Finance Company (*id*. ¶ 1-14, 16-18).

The S1 Indictment was returned by the grand jury on April 8, 2013.  Count One charges Kurniawan with mail fraud for allegedly engaging in a scheme to create and sell counterfeit wines.  (S1 Ind. ¶¶ 1-15).  Count Two charges Kurniawan with wire fraud for allegedly engaging in a scheme to defraud a Finance Company – *i.e.*, Fine Art Capital.  (*Id*. ¶¶ 1-14, 16-

18).  The allegations in the two counts of the S1 Indictment are substantially similar to the same counts in the Indictment.

### 1.  Count One of the S1 Indictment – Wine Counterfeiting Scheme

Count One of the S1 Indictment alleges that Kurniawan devised and participated in a scheme to defraud wine collectors by creating and selling counterfeit wines from 2004 through and including February 2012.  Kurniawan created the counterfeit wines in his home using a variety of materials that are discussed at length in the S1 Indictment.  (S1 Ind. ¶  4).  The S1 Indictment also alleges that Kurniawan sold and attempted to sell specific bottles of wine through a private sale in May 2005 (*id*. ¶  6), a direct sale in September or November 2006 (*id*. ¶  14), and at wine at auctions held in January 2006, October 2006, April 2008, and February 2012.  (*Id*. ¶¶  7-11).  The S1 Indictment further alleges that, based of suspicions based on the defendant's earlier sales of wine, in later years the defendant attempted to sell wine through a nominee rather than his own name and that the defendant's attempted sales of wine were aborted because of suspicions that his prior sales of wines were counterfeit.  (*Id*. ¶¶ 9-13).

Count One alleges that Kurniawan used the mails/private carriers and caused others to use the mails/private carriers in furtherance of the alleged scheme to sell counterfeit wines.  The statutory allegation in the S1 Indictment states that "KURNIAWAN caused to be mailed and/or transported by interstate carrier (i) catalogues for auctions containing descriptions of the counterfeit wines to and from New York, New York, (ii) empty bottles of rare and expensive wines from New York, New York to Arcadia, California, and (iii) counterfeit wines from Arcadia, California to Mamaroneck, New York."  (S1 Ind. ¶  15).

In support of the statutory allegation, the S1 Indictment alleges that,  Kurniawan "procured empty bottles of genuine rare and expensive wines so that he could recycle them for use as part

of his fraudulent counterfeit wine scheme." (S1 Ind. ¶ 4(b)). The S1 Indictment goes on to say

that "on multiple occasions between 2004 and 2006, KURNIAWAN received, via Federal

Express, empty bottles of rare and expensive wines from a restaurant in New York, New York."

(*Id.*).

 The S1 Indictment further alleges the following:

> [I]n furtherance of his fraudulent scheme, KURNIAWAN sold
> counterfeit wines on multiple occasions, including at least three
> auctions conducted by an auction house located in Manhattan, New
> York ("New York Auction House"), and for which catalogues
> advertising KURNIAWAN's purportedly authentic wines were
> mailed from the auction house to customers in Manhattan, New
> York and elsewhere in the months leading up to the auctions.
> Specifically, KURNIAWAN sold counterfeit wines at auctions that
> the New York Auction House conducted in or about January 2006,
> October 2006, and April 2008. KURNIAWAN further attempted
> to sell counterfeit wines at an auction in London, England in
> February 2012.

(S1 Ind. ¶ 5).

## 2. Count Two of the S1 Indictment – Scheme to Defraud Fine Art Capital

 Count Two charges the defendant with participating in scheme from on or about November

28, 2007, up to and including on or about May 2, 2008 to fraudulently obtain a $3 million loan

from Fine Art Capital, a financing company located in New York, New York, that specializes in

extending loans that are secured by valuable collectibles. (S1 Ind. ¶ 17). The Government

expects the trial evidence will show that in or about late 2007, the defendant sought a loan from

Fine Art Capital and that, as part of his loan application, the defendant lied about (i) the amount

of outstanding personal debt he had; (ii) the amount of his annual expenses; and (iii) his

immigration status. With respect to the use interstate wires in furtherance of the scheme, Count

Two alleges that "in furtherance" of the scheme, Kurniawan "caused interstate telephone calls and interstate wire transfers to be made from New York, New York." (*Id.* ¶ 18).

## B. Argument

### 1. The Indictment Sufficiently Alleges All of the Essential Elements of Mail Fraud and Wire Fraud

The S1 Indictment is facially valid because it alleges all of the essential elements of mail fraud and wire fraud. It is not necessary for the Government to allege the specific dates of mailings and wires. The defendant has more than adequate notice of the charges against him and cannot show prejudice. The Motion should therefore be denied.

#### a. Applicable Law

Under Federal Rules of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Doe,* 63 F.3d 121, 125 (2d Cir. 1995) (citations omitted). Motions to dismiss indictments are disfavored. *See, e.g., United States v. Bustos de la Pava*, 268 F.3d 157, 165 (2d Cir. 2001) ("dismissal of an indictment is an extraordinary remedy reserved for extremely limited circumstances implicating fundamental rights" (citation and internal quotation marks omitted)). On a pre-trial motion to dismiss an indictment pursuant to Fed. R. Crim. P. 12(b), this Court must accept all factual allegations in the indictment as true. *See United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment"); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

5

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part, that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need only track the language of the statute charged and state the time and place of the alleged crime. *See United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (citation omitted).

"'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Alfonso*, 143 F.3d at 776 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). To be sufficient, "'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *Id*. at 776 (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)); *see also United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008) ("an indictment 'need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.'") (quoting *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002))).

An indictment that charges mail fraud or wire fraud pursuant to Sections 1341 and 1343 of Title 18, United States Code, is sufficient even if it does not allege the precise dates of the alleged mailings or wires. *See United States v. Zandstra*, No. 00 CR 209 (RWS), 2000 WL 1368050, at *3-4 (S.D.N.Y. Sept. 20, 2000) (mail fraud); *United States v. Reale*, No. S4 96 Cr. 1069, 1997 WL 580778, at *13-14 (S.D.N.Y. Sept. 17, 1997) (mail and wire fraud).

When analyzing the sufficiency of an indictment, "common sense and reason prevail over technicalities." *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001). Therefore, in

6

determining whether a count of an indictment sufficiently alleges an offense, the indictment should be read in its entirety, *see United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992), and should be "read to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). The Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (citation omitted).

**b. Discussion**

Kurniawan's argument that the S1 Indictment is defective because it fails to allege the specific dates of mailings or interstate wires is meritless. (11/4/13 Mot. to Dismiss ("MTD") at 1-7). An indictment is sufficient if, like the S1 Indictment, it tracks the statutory language, alleges all of the essential elements of the offenses, and gives the defendant notice of the charges he faces. Courts have routinely held that an indictment that meets those requirements is sufficient even if the indictment does not plead use of the mails or wires on particular dates. Kurniawan also has more than enough notice of what the pertinent mailings and wires are because the 50-page Complaint identifies numerous mailings and wires. Kurniawan has thus suffered no prejudice and the Motion should be denied.

The Government must satisfy three elements to secure a conviction for mail fraud or wire fraud: (1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails or interstate wires. *See Fountain v. United States,* 357 F.3d 250, 255 (2d Cir. 2004); *United States v. Walker,* 191 F.3d 326, 334 (2d Cir. 1999). The mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, "use the same relevant language, [and] are analyzed in the same way." *United States v. Slevin,* 106 F.3d 1086, 1088 (2d Cir. 1996) (citations omitted).

7

Count One of the S1 Indictment is facially valid and sufficient because it pleads all of three essential elements of mail fraud. *First*, the S1 Indictment alleges a scheme to defraud wine buyers by selling them counterfeit wines that existed from approximately 2004 through and including February 2012. (S1 Ind. ¶¶ 1-15). *Second*, the S1 Indictment alleges that the object of the scheme was to deprive wine buyers of money or property. (*Id.*). *Third*, Count One alleges that Kurniawan "caused to be mailed and/or transported by interstate carrier (i) catalogues for auctions containing descriptions of the counterfeit wines to and from New York, New York, (ii) empty bottles of rare and expensive wines from New York, New York to Arcadia, California, and (iii) counterfeit wines from Arcadia, California to Mamaroneck, New York." (*Id.* ¶ 15). The S1 Indictment further specifies that Kurniawan caused wine auctions catalogues to be mailed to and from New York, New York in furtherance of the scheme in or about January 2006, October 2006, April 2008, and February 2012. (*Id.* ¶ 5). Count One also alleges that the empty bottles that Kurniawan received were mailed to him via Federal Express "on multiple occasions between 2004 and 2006." (*Id.* ¶ 4(b)).

Count Two of the S1 Indictment is also facially valid and sufficient because it pleads all of three essential elements of wire fraud. *First*, the S1 Indictment alleges that Kurniawan participated in a scheme to defraud the Finance Company from on or about November 28, 2007 through and including May 2, 2008. (S1 Ind. ¶¶ 17-18). *Second*, Count Two alleges that the object of the scheme was to deprive the Finance Company of money or property. (*Id.*). *Third*, Count Two alleges that in furtherance of that scheme, Kurniawan "caused interstate telephone calls and interstate wire transfers to be made from New York, New York." (*Id.* ¶ 18).

As set forth above, the S1 Indictment is facially valid because it alleges all of the essential elements of mail fraud and wire fraud and the defendant has adequate notice of the charges

8

against him.  *See LaSpina*, 299 F.3d at 177; *Alfonso*, 143 F.3d at 776; *United States v. Finazzo*, No. 10–CR–457 (RRM), 2011 WL 3794076, at *1-3 (E.D.N.Y. Aug. 24, 2011) (finding indictment for mail and wire fraud facially valid because it tracked language of statutes, defendants were adequately informed of charges and could plead double jeopardy).

Courts have routinely held that an indictment's failure to allege the particular dates of mailings or wires in unnecessary and that an indictment that fails to do so should not be dismissed.  *See Zandstra*, No. 00 CR 209 RWS, 2000 WL 1368050, at *3-4 (indictment alleging mail fraud was sufficient that "identifies the approximate time period during which this scheme is alleged to have taken place" . . . "alleges the use of a private and commercial interstate carrier (Federal Express), the nature of the fraudulent scheme . . . and the object of the scheme (to obtain money or property)); *Reale*, No. S4 96 Cr. 1069, 1997 WL 580778, at *13-14; *United States v. Upton*, 856 F. Supp. 727, 738-40 (S.D.N.Y. 1994) (not necessary to specifically identify use of wires in wire fraud indictment).

Kurniawan also has more than sufficient notice of the charges against him because the Complaint identifies multiple mailings and wires.  *See United States v. Klein*, No. 03 CR. 1471 (HB), 2004 WL 1191962, at *3 (S.D.N.Y. May 27, 2004) (complaint coupled with indictment gave defendant adequate notice).  With respect to mailings in furtherance of the wine counterfeiting scheme charged in Count One of the S1 Indictment, the Complaint alleges that Kurniawan received five boxes of empty wines bottles in 2004, six boxes of empty wines bottles in 2005, and seven boxes of empty wines bottles in 2006, all via Federal Express from New York.  (Compl. ¶ 55).  Kurniawan also received empty bottles from another source in or about May 30, 2007 via Federal Express.  (*Id*. ¶ 57).  The Complaint states that many of the catalogues for the April 2008 auction where allegedly fake wines from Domaine Ponsot were

consigned by the defendant were mailed by the U.S. Postal Service.   (*Id*. ¶ 36(a)).   The

Complaint also alleges that catalogues for the auction held in London on February 12, 2012,

which contained fake wines consigned by Kurniawan, were mailed on or about January 11 and

12, 2012 via the U.S. Postal Service.  (*Id*. ¶  47(a)).

   With respect to Count Two, the scheme to defraud the Financing Company, the Complaint

alleges that Kurniawan participated in an interstate telephone call with an employee of the

Financing Company on or about December 11 and 29, 2007 regarding Kurniawan's application

for a $3 million loan.  (Compl. ¶  24).  It further alleges that the Financing Company disbursed

funds to Kurniawan from the approved loan via wire transfer on or about January 18, 2008 and

February 28, 2008.  (*Id*. ¶  27).  The Complaint also states that on or about May 15, 2008,

Kurniawan sent a "Security Agreement (Chattel Mortgage)" via interstate facsimile to counsel

for the New York Auction House.  (*Id*. ¶  28).   The Complaint and the S1 Indictment both

allege that Kurniawan double-pledge some of the collateral used to secure the $3 million loan

from the Financing Company to the New York Auction House in the Security Agreement

(Chattel Mortgage).

   Kurniawan has also failed to explain how he has been prejudiced by the lack of specificity in

the S1 Indictment.  Kurniawan merely makes generalized arguments about prejudice but he

makes no attempt to connect those arguments to his case.  Absent a showing of prejudice

grounded in the facts of this case, the Motion must be denied.  *See Walsh*, 194 F.3d at 45

(defendant must show prejudice).

## 2.  The Indictment Is Not Duplicitous

   The S1 Indictment is not duplicitous because Counts One and Two respectively charge a

single continuous scheme and course of conduct.  Courts have routinely upheld charges alleging

multiple mailings or wires in a single count in similar cases.  Kurniawan has also failed to show how he is prejudiced by facing two counts rather than multiple counts alleging that each mailing or wire is its own distinct offense.  Accordingly, the Motion should be denied.

### a.  Applicable Law

Federal Rule of Criminal Procedure 8(a) provides, in relevant part, that the "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged  . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).

The Second Circuit has held that "[a]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby."  *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (internal quotation marks omitted); *accord United States v. Vilar*, 729 F.3d 62, 79-80 (2d Cir. 2013).

Duplicitous pleading, however, is not presumptively invalid. *See Sturdivant*, 244 F.3d at 75 n.3 (noting that duplicitous charging is "impermissible" only if it prejudices defendant). Duplicity is only properly invoked when the indictment affects one or more policy concerns, such as (1) avoiding uncertainty of general guilty verdict by concealing finding of guilty as to one crime and not guilty as to other, (2) avoiding risk that jurors may not have been unanimous as to any one of the crimes charged, (3) assuring defendant adequate notice of charged crimes, (4) providing basis for appropriate sentencing, and (5) providing adequate protection against double jeopardy in subsequent prosecution.  *See United States v. Margiotta*, 646 F.2d 729, 732-33 (2d Cir. 1981).

The Second Circuit "has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) (internal quotation marks omitted).  "As long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *see also United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992); *Margiotta*, 646 F.2d at 733 (approving inclusion of multiple fraudulent mailings in single mail fraud charge).

In fact, the Second Circuit has acknowledged that aggregated pleading may be to the defendant's benefit by "limiting the maximum penalties" he might face if he were charged and convicted on separate counts for what amounts to a single scheme. *See Margiotta*, 646 F.2d at 733; *accord Olmeda*, 461 F.3d at 281-82.  A single count compared to multiple counts would also avoid the defendant's portrayal to the jury "as the perpetrator of [multiple] crimes." *Id.*

Furthermore, duplicity is a rule of pleading and its violation does not warrant dismissal.  *See United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977).  The appropriate remedy is to require the government to elect between the duplicitous charges prior to trial.  *Id.* at 363; *United States v. Parker*, 165 F. Supp. 2d 431, 451 (W.D.N.Y. 2001).

### b.  Discussion

Kurniawan argues that the S1 Indictment is duplicitous because Counts One and Two charge multiple mailings and wires respectively, rather than charging each mailing and wire as its own crime.  (MTD at 7-9).  Kurniawan's Motion is meritless because courts have routinely held that where the mailings or wires are part of a single continuous scheme, an indictment can group all of the relevant mailings or wires into one count, which is precisely the case here.  Kurniawan has

more than sufficient notice of the charges against him and he cannot show how he has been specifically prejudiced by the S1 Indictment.  Rather than being prejudiced, Kurniawan actually benefits by facing only two counts rather than multiple counts stemming from multiple mailings and wires.

The charges in the S1 Indictment are not duplicitous for the simple reason that each count alleges mailings and wires in furtherance of a single continuous scheme to create and sell counterfeit wine and a scheme to defraud Fine Art Capital, respectively.  Count One alleges that Kurniawan used the mails and caused others to use the mails in pursuit of Kurniawan's counterfeiting efforts.  The mails were used, for example, to procure the materials Kurniawan needed to make counterfeit wines, such as empty bottles.  The mails were also used to ship the counterfeit wines to various wine auctions and, in turn, the auction houses distributed the catalogues offering the allegedly fake wines to customers through the mails.  Further, the defendant's conduct in the later part of the scheme – including his attempts to conceal his identity in connection with attempted sales of wine after others began to suspect he was a counterfeiter – is informed by his counterfeiting conduct earlier in the scheme.  In sum, Count One alleges a single scheme to create and sell counterfeit wines.  Similarly, Count Two of the S1 Indictment alleges a single continuing scheme to defraud the Financing Company.  Count Two, which is charged as wire fraud, alleges that Kurniawan cause interstate phone calls and interstate wire transfers to be made that were in furtherance of the alleged fraud.

It is longstanding law in the Second Circuit that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."  *Olmeda*, 461 F.3d at 281 (internal quotation marks omitted); *see also United States v. Robinson*, No. 07–3680–cr., 2008 WL

4420025, at *1 (2d Cir. Sept. 26, 2008) (counts against defendant for bank fraud, mail fraud, and

wire fraud were not duplicitous because all of defendant's activities were part of a single

continuing scheme); *Zandstra*, No. 00 CR 209 RWS, 2000 WL 1368050, at *5 (rejecting

duplicity argument because each mailing was in furtherance of "a single continuing scheme").

"As long as the essence of the alleged crime is carrying out a single scheme to defraud, then

aggregation is permissible." *Tutino*, 883 F.2d at 1141.  Indeed, the Second Circuit has approved

a single count of mail fraud that rested on 50 mailings.  *See Margiotta*, 646 F.2d at 733.  In sum,

although each mailing and wire *could* be charged as a separate count, there is no requirement that

the Government do so.

Kurniawan has also not shown that he suffered any unfair prejudice from the S1 Indictment.

*See Sturdivant*, 244 F.3d at 75 (duplicitous charging is "impermissible" only if it prejudices

defendant).  Kurniawan has not shown how the S1 Indictment has prejudiced his ability to

protect any of the policy goals that underlying the duplicity doctrine.  *See Margiotta*, 646 F.2d at

732-33 (identifying policy goals).  Kurniawan merely recites a laundry list of protections that he

claims have been violated, which for the reasons below are meritless.  But even if the Court finds

the S1 Indictment to be impermissibly duplicitous, the proper remedy is not to dismiss the S1

Indictment, but to require the Government to elect between the duplicitous charges prior to trial.

*See Droms*, 566 F.2d at 363.

### i.  Kurniawan's Right to Be Tried on Charges Presented to the Grand Jury Has Not Been Violated

Kurniawan argues that the lack of specificity regarding mailings and wires in the S1

Indictment undermines Kurniawan's right to be tried on the charges brought by the grand jury.

(MTD at 10-11).  This argument should be rejected because the S1 Indictment alleges all of the

14

essential elements of the offenses and is thus valid on its face.  There is also a presumption of

regularity that applies to grand jury proceedings.  *See Hamling v. United States*, 418 U.S. 87, 139

n.23 (1974).  Kurniawan has not proffered a single reason to believe that he will not be tried on

the charges brought by the grand jury.  And for the reasons given above, Kurniawan has more

than adequate notice of the charges against him.  In addition to the 19-page S1 Indictment,

Kurniawan has a 50-page Complaint he can look to for more information about the charges he

faces.

### ii.  The Allegations In the S1 Indictment Are Timely

Kurniawan claims that it is unclear whether the charges in the S1 Indictment are timely

because the specific dates of the mailings and wires are not alleged.  (MTD at 11-15).  This too is

a baseless argument because at this stage of the prosecution, an indictment that alleges a crime

within the limitations period, such as the S1 Indictment, is valid on its face and should not be

dismissed on statute of limitations grounds.

Kurniawan was indicted on May 9, 2012 and the S1 Indictment was filed on April 8, 2013.

The statute of limitations for Counts One and Two of the S1 Indictment is five years pursuant to

Title 18, United States Code, Section 3282.[1]  That statute states in relevant part that, "no person

---

[1] Because the S1 Indictment was a superseding indictment and the charges in the S1 Indictment
are nearly identical to the charges in the Indictment returned on May 9, 2012, the limitations
period can be measured from May 9, 2012, rather than April 8, 2013, when the S1 Indictment
was returned.  *See United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976) ("[O]nce an
indictment is brought, the statute of limitations is tolled as to the charge contained in that
indictment."); *United States v. Robilotto*, 828 F.2d 940, 949 (2d Cir. 1987) ("if brought during
the valid pendency of the initial indictment, a superseding indictment containing substantially the
same charges as the superseded indictment should have no effect on the initial tolling of the
statute of limitations") (citations omitted).  The difference between the two dates is immaterial,
however, since both counts in the S1 Indictment are timely even under the later date of the S1
Indictment.

shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found

or the information is instituted within five years next after such offense shall have been

committed." 18 U.S.C. § 3282(a). This period runs from the date of the charged mailing or

wire, regardless of whether the defendant's actions concerning the alleged scheme to defraud

occurred before the statutory period. *See United States v. Eisen*, 974 F.2d 246, 263 (2d Cir.

1992). Additionally, mailings or wires that predate the expiration of the statute of limitations are

not out of time if they are part of a count alleging a single continuous scheme to defraud. *Id.* at

263-64; *United States v. Bruno*, No. 1:09–CR–29 (GLS), 2009 WL 2601249, at *3-4 (N.D.N.Y.

Aug. 21, 2009).

At this point, Kurniawan's motion is premature because the S1 Indictment alleges that

Kurniawan committed mail and wire fraud within the 5-year limitations period. On a pre-trial

motion to dismiss an indictment, this Court must accept all factual allegations in the indictment

as true. *See Alfonso*, 143 F.3d at 777; *Goldberg*, 756 F.2d at 950.

Count One of the S1 Indictment alleges that Kurniawan was engaged in a scheme to create

and sell counterfeit wines from in or about 2004 through and including February 2012. (S1 Ind.

¶ 15). Count One alleges that Kurniawan was selling counterfeit wines as recently as February

2012 in London and that catalogues were mailed from London to New York and elsewhere just

before the London auction. (*Id.* ¶¶ 5, 11-13). Accordingly, because the S1 Indictment was

returned only 14 months after the February 2012 London auction, Count One is not barred by the

statute of limitations.

Count Two of the S1 Indictment also alleges a timely offense. Count Two alleges that

Kurniawan participated in a scheme to defraud Fine Art Capital from on or about November 28,

2007 through and including May 2, 2008. (S1 Ind. ¶ 18). It further alleges that Kurniawan

16

caused the use of interstate phone calls and interstate facsimiles in furtherance of the offense. (*Id*.).  The 5-year limitations period thus expired on May 2, 2013.  Count Two of the S1 Indictment is thus timely because it was returned on April 8, 2013 and the 5-year limitations period did not expire until May 2, 2013, at the earliest.

When faced with an indictment that alleges a timely offense, like the S1 Indictment, this Court should deny a pre-trial motion to dismiss the S1 Indictment.  "If the government fails to prove at trial that any of the mailings [or wires] occurred within the limitations period," Kurniawan can renew his motion.  *United States v. Berger*, 22 F. Supp. 2d 145, 153-54 (S.D.N.Y. 1998).

Finally, the Government offers by way of proffer that it will be able to prove at trial that, at a minimum, the defendant caused interstate mailings to be made in furtherance of the wine counterfeiting allegations as recently as January 2012.  Likewise, the Government proffers that it will prove at trial that the defendant caused the use of interstate wires in or about May 2008 in furtherance of the wire fraud scheme charged in Count Two.  These proffers are independent bases upon which to deny the Motion.  *See United States v. Scotto*, No. 06 Cr. 312, 2006 WL 2494430, at *2 (S.D.N.Y. Aug. 29, 2006) (denying the motion to dismiss because "the Government alleges that it can prove Scotto engaged in a course of conduct to evade payment of taxes for which he was responsible, and that some of those acts fell within the applicable statute of limitations").

### iii.  Kurniawan's Other Rights Have Not Been Violated

Finally, Kurniawan argues that by grouping multiple mailings and wires into two counts would create "uncertainty" as to whether the jury's verdict was unanimous as to each element of

the offenses.  (MTD at 16-17).  He also argues that his right against double jeopardy is impaired because the S1 Indictment does not provide enough detail and is duplicitous.  (*Id*. at 17-18).

These arguments are meritless.  As stated previously, indictments that allege multiple mailings or wires in a single count are routinely upheld as proper.  The Court will instruct the jury that the Government bears the burden of proving each of the essential elements of each offense beyond a reasonable doubt and that one of those elements is the use of the mails or interstate wires in furtherance of the fraud, as the case may be.  Courts have also routinely rebuffed claims that a defendant's double jeopardy rights have been compromised by indictments that charge multiple mailings or wires in a single indictment when the course of the illegal conduct is a single continuous scheme.  *See Margiotta*, 646 F.2d at 733 (the risk that a defendant's rights will be impaired "is slight in a case like this where the essence of the alleged wrong is the single scheme to defraud and the various mailings, though they are technically the acts that violate the federal statute, are really the jurisdictional bases for federal prosecution.").

Accordingly, the defendant's motion to dismiss should be denied.

## II. The Defendant's Motions *In Limine* Should Be Denied

In the defendant's omnibus motions *in limine*, the defendant seeks to (i) preclude the Government from offering evidence of the sale of counterfeit wines prior to March 2007; (ii) preclude the Government from offering evidence that the defendant defrauded other victims in addition to Fine Art Capital in connection with the conduct charged in Count Two; and (iii) strike certain allegations from the S1 Indictment regarding the sale of counterfeit wine prior to March 2007.

With respect to the sales of counterfeit wine prior to March 2007, the Government properly charged the defendant in Count One with a single, continuing scheme to defraud that stretches

18

over a number of years, as discussed in detail above.  As such, evidence of the defendant's sales of allegedly counterfeit wines prior to March 2007 are admissible as proof of the defendant's alleged scheme because they arise out of the same series of transactions as the charged offense, are inextricably intertwined with the evidence of the charged offense, and are necessary to complete the story of the defendant's alleged fraudulent scheme.  Moreover, the allegations regarding these sales are properly included in the S1 Indictment.  Accordingly, the motions to preclude evidence of the sale of wines prior to March 2007 and strike allegations of those sales from the Indictment should be denied.  With respect to the "New York Auction House" and the "California Collector," the Government does not intend to assert that they were the victims of the fraudulent conduct alleged in Count Two and thus, that motion should be denied as moot.

## A. Evidence of the Sale of Allegedly Counterfeit Fines Prior to March 2007 Is Admissible As Evidence of the Scheme to Defraud

The defendant argues (i) that evidence of the sales of allegedly counterfeit wine prior to March 2007 should be excluded because they are outside the relevant statute of limitations and (ii) even if evidence of the sales were admissible, it would only be admissible as other act evidence under Rule 404(b).  The defendant is incorrect on both contentions.

The defendant is incorrect to assert that evidence is inadmissible merely because it is outside the limitations period.  The Second Circuit has held that relevant evidence is not inadmissible merely because it antedates the limitations period.  *See United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) ("The prior act evidence adduced . . . went directly to establishing [defendant's] intent, as well as the preparations and plans that went into the scheme to defraud, . . . *and such evidence is admissible even though it antedates the limitations period*.") (emphasis added); *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations

19

does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992) ("A suggestion that the evidence is too old goes to its relevance and to its weight. Any question as to the weight to be accorded a relevant document is a matter for the jury."); *see also United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) (finding, in a mail and wire fraud case, that evidence that "helps establish the scheme [to defraud] and the guilty intent" was properly admitted even if it antedates the limitations period). Indeed, the Fifth Circuit observed that the "statute of limitations is a defense . . . , *not a rule of evidence*," that has "*no bearing on the admissibility of evidence*." *Ashdown*, 509 F.2d at 798 (emphasis added). "It would be a bizarre result indeed if a crime properly prosecuted within the limitations period could not be proven because an essential element, such as intent, could only be established by proof of incidents occurring outside the period." *Id.* Thus, the defendant is entirely wrong in his argument that "[a]lthough activities that occurred outside of the statutory period may support an element of a charged crime, they are nonetheless inadmissible as violative of the statute of limitations." (Defendant's MIL at 2).

The defendant is also incorrect to argue that evidence outside of the limitations period is admissible *only* pursuant to Rule 404(b). The defendant fails to cite a single case in the Second Circuit that squarely supports his argument. Indeed, the Second Circuit's caselaw supports the opposite conclusion, that the challenged evidence in this case – the sales of allegedly counterfeit wines prior to March 2007 – is admissible not as 404(b) evidence, but as *direct* evidence of the defendant's fraudulent scheme.

The Second Circuit has routinely held that "evidence of uncharged criminal activity" is admissible as direct evidence of an offense "if it arose out of the same transaction or series of

transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Kaiser*, 609 F.3d 556, 570-71 (2d Cir. 2010) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).   In cases involving schemes to defraud, the Second Circuit has routinely held that evidence of uncharged and prior fraudulent acts are admissible as direct evidence of the charged fraudulent scheme. *See United States v. Mavashev*, 455 Fed. Appx. 107, 111-12 (2d Cir. 2012) (holding that evidence of uncharged fraudulent transactions was admissible as direct evidence of bank and wire fraud offenses); *Kaiser*, 609 F.3d at 570-71 (holding that evidence of fraudulent conduct prior to the time charged in the indictment was admissible as direct proof, not as "other acts" evidence under Rule 404(b)); *United States v. Rigas*, 490 F.3d 208, 238-39 n.43 (2d Cir. 2007) (finding that evidence of, among other things, "how the fraudulent invoice scheme began was proper as context to 'complete the story' of the scheme" in a fraud case); *United States v. Earls*, 157 Fed. Appx. 421, 422 (2d Cir. 2005) (holding, in a securities, mail, and wire fraud case, that "the District Court did not abuse its discretion by admitting evidence that Earls participated in two prior investment schemes that strongly resembled [the charged scheme] that Earls used to defraud investors of over twenty million dollars-because evidence of these schemes 'complete[d] the story of the crime on trial.'"); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (holding, in a false statements case, that evidence of prior fraudulent conduct was inextricably intertwined with the charged conduct and was therefore admissible as direct evidence).   The Second Circuit has applied this rule in other contexts as well. *See, e.g., United States v. Robinson*, 702 F.3d 22, 37-38 (2d Cir. 2012) (holding that evidence of defendant's involvement with prostitutes in the past was properly admitted to prove the defendant was involved in sex trafficking); *United States v.*

*Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (holding that evidence of the defendant's uncharged prior possession of a firearm was directly admissible to show that the defendant possessed the firearm on the date charged in the indictment).   Thus, it is clear, under the law of the Second Circuit, that other fraudulent conduct can be introduced as direct evidence of a scheme to defraud.

But that is not even the case here, as the decisions cited above address the admissibility of *uncharged* conduct as proof of a scheme to defraud.  In this case, the challenged evidence has actually been *charged* in the S1 Indictment as part of a continuing scheme to defraud.  In his motion *in limine*, the defendant proceeds from the faulty assumption, addressed in detail above, that the S1 Indictment is impermissibly duplicitous and that it improperly charges an overarching scheme rather than separately charging each mailing or wire.  As the Government argued above, however, there is nothing improper or unfair with the charges in the S1 Indictment.  As to the defendant's contention that some of the conduct charged in the S1 Indictment antedates the limitations period, the Government asserted above that as long as it can prove that some at least one of the mailings occurred within the limitations period, the charges are appropriate.  *See United States v. Eisen*, 974 F.2d 246, 263-64 (2d Cir. 1992) (finding mailings or wires that predate the expiration of the statute of limitations are not out of time if they are part of a count alleging a single continuous scheme to defraud); *see also United States v. Bruno*, No. 1:09–CR–29 (GLS), 2009 WL 2601249, at *3-4 (N.D.N.Y. Aug. 21, 2009).

Even applying the Second Circuit's test for the admissibility of uncharged acts as direct evidence of scheme to defraud, the challenged evidence meets all three categories: (i) it arises out of the same series of transactions as the charged offense; (ii) is inextricably intertwined with the evidence of the charged offense; and (iii) it is necessary to complete the story of the offense.

The defendant is charged in this case with devising a scheme to defraud unsuspecting collectors of rare and fine wines by selling counterfeit wines.  The defendant's sales of allegedly counterfeit wines are essential evidence that are inextricably intertwined with the evidence of the defendant's scheme.  The Government intends to call witnesses and present evidence that will show how the defendant held himself out to the community as an expert on wines over a number of years, and how the defendant's earlier sales of counterfeit wines affected his conduct and reputation in later years.  For example, the Indictment alleges that in February 2012 the defendant attempted to sell wines through a nominee because he had by then come under scrutiny for having sold counterfeit wines.  (Ind. ¶ 11).  If the Government were precluded from adducing evidence of earlier sales of counterfeit wines, there is no way, for example, that the Government could coherently explain the defendant's use of a nominee in 2012 or why, in April 2008, an auction of the defendant's wines was canceled due to concerns over authenticity.  In short, the evidence of the defendant's earlier sales of counterfeit wine is inextricably intertwined with the other evidence in this case and there is simply no logical or rational way for the Government to excise the evidence of the defendant's pre-March 2007 sales and still present a coherent story for the jury.

Of the principal cases relied on by the defendant in support of his argument, only one is from the Second Circuit.  However, that case, *United States v. Levy*, 731 F.2d 997 (2d Cir. 1984), did not concern a situation where the indictment alleges a continuing scheme of criminal conduct and therefore is inapposite here.  In *Levy*, the defendant was charged with one count[2] of

---

[2] In *Levy*, the defendant was also charged with possession with intent to distribute based on other conduct, but that count concerns different conduct that was not relevant to the Court's analysis of the 404(b) issue.  *Levy*, 731 F.2d at 998-1001.

distributing heroin related to a discrete, single narcotics transaction. The Second Circuit held that evidence of a prior, *uncharged* narcotics transaction could not constitute direct evidence of the charged conduct but was instead admissible, if at all, under Rule 404(b). *Levy*, 731 F.2d 1004. Thus, *Levy* does not address a situation, such as the instant case, where the defendant is charged in a continuing scheme – and where all the evidence the Government intends to introduce is *charged* in the Indictment as part of the scheme – and is therefore not applicable here.[3]

Indeed, as the cases cited above make clear, the Second Circuit has no problem in admitting evidence of prior fraudulent conduct as direct evidence of a fraudulent scheme. *See*, *e.g.*, *United States v. Rigas*, 490 F.3d 208, 238-39 n.43 (2d Cir. 2007) (finding that evidence of, among other things, "how the fraudulent invoice scheme began was proper as context to 'complete the story' of the scheme" in a fraud case); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (holding, in a false statements case, that evidence of prior fraudulent conduct was inextricably intertwined with the charged conduct and was therefore admissible as direct evidence).

Further, the Second Circuit's decision in *Levy* appears to be motivated by a concern over the sufficiency of the evidence in that case, such that it was unclear whether evidence of the charged conduct, alone, was sufficient to convict the defendant. *Id.* By contrast, here, there is no such concern – as detailed above, the Government has ample proof that mailings occurred within the limitations period such that there will be no question that the Government carried its burden at

---

[3] Likewise, the defendant also relies on *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000), in which the District of Columbia Circuit held that evidence of a prior instance in which the defendant possessed counterfeit currency could not be admitted as direct evidence of a later instance in which the defendant possessed counterfeit currency. *Bowie*, 232 F.2d at 929-931. Like *Levy*, this case differs from the instant case because no ongoing and interrelated scheme was been charged; there are merely two discrete instances of possession of counterfeit currency.

trial.  And, as the Government expects to show at trial, the evidence in this case is very strong.
Finally, it appears that the Second Circuit has allowed evidence of uncharged drug transactions
to be admitted as direct evidence in other cases.  *See*, *e.g.*, *United States v. Esclera*, __ Fed.
Appx. __, 2013 WL 4711465, at *4 (2d Cir. Sept. 3, 2013) (summary order) (finding that
uncharged sales of narcotics were admissible as direct evidence of charged narcotics conduct "to
complete the story of the crime at trial").

The defendant also relies on *Unites States v. Anzalone*, 783 F.2d 10 (1st Cir. 1986), a First
Circuit case.  However, *Anzalone* actually lends support to the Government's position in that it
holds that evidence regarding two victims that were unnamed in the indictment was admissible
as direct evidence of the scheme to defraud because the evidence "was necessary in order to
establish the predicate for the subsequent [fraudulent conduct]."  783 F.2d at 11.  Similarly, in
the instant case, evidence of the defendant's earlier sales of counterfeit wines is necessary to
explain the defendant's later conduct, such as attempting to sell wine through a nominee after his
prior counterfeiting had been exposed.

To be sure, the First Circuit also held in *Anzalone* that evidence related to other victims was
more properly admitted as "other act" evidence under 404(b) where the acts merely "share[d] a
common modus operandi" with the charged scheme.  *Anzalone*, 783 F.2d at 12.  However, in the
instant case, as noted above, the prior sales of wine show more than a common *modus operandi*;
they are interwoven and inform the Government's proof of the entire scheme.  Moreover, it
appears that in *Anzalone* the additional victims "were not named in the mailing counts" and thus
the fraudulent conduct related to those victims does not appear to have been charged in a
continuing scheme.  *Id*. at 11.  The stated reason for this was because the conduct was outside of
the limitations period.  *Id.*   To the extent that this reflects a difference in the law in the First

25

Circuit, it is not binding here, as the Second Circuit clearly permits allegations concerning a continuing scheme that antedate, in part, the limitations period, as explained above.  In any event, the First Circuit nonetheless affirmed the conviction, finding that the district court had engaged in a balancing test under Rule 403.  *Id*. at 12.[4]

Finally, the evidence of the defendant's pre-March 2007 sales is admissible because its probative value is not outweighed by unfair prejudice.  Rule 403 of the Federal Rules of Evidence authorizes the exclusion of relevant evidence only if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). All evidence of guilt is, of course, prejudicial, in the sense of disadvantaging the defense, but that is not the same as being "unfairly" prejudicial. *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." (emphasis in original)). Evidence that is neither "more sensational" nor "disturbing" than the charged crimes will not be deemed unfairly prejudicial. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *accord Curley*, 639 F.3d 50, 59 (2d Cir. 2011).

Accordingly, the motion to preclude evidence of the pre-March 2007 sales of allegedly counterfeit wines should be denied.

Furthermore, the defendant's motion to strike the allegations of the pre-March 2007 sales from the Indictment should also be denied.  In this circuit, "[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime

---

[4] The defendant also relies on *United States v. Young*, 702 F. Supp. 2d 11 (D. Me. 2010), which follows the First Circuit's ruling in *Anzalone*.  Thus, it is inapposite for the reasons stated above.

charged and are inflammatory and prejudicial.  If the evidence is admissible and relevant to the

charge, then regardless of how prejudicial the language is, it may not be stricken." *United States*

*v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990).   As argued above, the evidence of pre-March

2007 sales is relevant and admissible.  Accordingly, this motion should be denied.

**B.  The Defendant's Motion to Preclude Evidence of Victims of Count Two Other Than Fine Art Capital Should Be Denied as Moot**

The defendant also moves to preclude the Government from offering evidence that the

defendant defrauded other victims in addition to Fine Art Capital in connection with the conduct

charged in Count Two.  This motion should be denied as moot.  The Government does not intend

to assert in its case-in-chief that the "New York Auction House" and the "California Collector"

were the victims of the fraudulent conduct alleged in Count Two.

**III. The Defendant's Motion for Rule 404(b) Notice Should Be Denied As Moot**

The defendant's motion for Rule 404(b) notice should be denied as moot.  In the

Government's motions *in limine* filed last week, the Government provided notice and moved for

the admission of certain 404(b) evidence; namely, that the Government should be allowed to

argue that the defendant's indebtedness, which is admissible as direct proof of the defendant's

fraud on Fine Art Capital (as charged in Count Two), is also evidence of the defendant's motive

to sell counterfeit wine (as charged in Count One).  The Government does not intend to seek the

admission of any other evidence pursuant to Rule 404(b).  Accordingly, the defendant's motion

should be denied as moot.

## **Conclusion**

For the reasons stated above, the Court should deny the defendant's motions.

Dated: New York, New York
       November 14, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York

                                        By: ___/s/ Jason P. Hernandez_____
                                             JASON P. HERNANDEZ
                                             JOSEPH P. FACCIPONTI
                                             Assistant United States Attorneys
                                             Tel.: 212-637-1024/2522