LAW OFFICES

## WESTON, GARROU & MOONEY
A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

JOHN H. WESTON[1‡]
G. RANDALL GARROU[1‡]
JEROME H. MOONEY[1, 4◊]
MARK P. BINDER[1‡]

REBEKAH FRUSHTICK[1,2]

[1]ADMITTED IN CALIFORNIA
[2]ADMITTED IN ILLINOIS
[4]ADMITTED IN UTAH

[‡]A CALIFORNIA PROFESSIONAL CORPORATION
[◊]A UTAH PROFESSIONAL CORPORATION

12121 WILSHIRE BOULEVARD
SUITE 525
LOS ANGELES, CALIFORNIA 90025
FAX (310) 442-0899
(310) 442-0072

**SALT LAKE CITY**
50 WEST BROADWAY
SUITE 1000
SALT LAKE CITY, UT  84101-2006
(801) 364-5635

July 18, 2014

Hon. Richard M. Berman
United States District Judge
For the Southern District of New York
500 Pearl Street
New York, New York 10007

FILED VIA ECF
ORIGINAL SENT VIA FEDEX

Re:    ***United States v. Rudy Kurniawan 1:12-CR-376 (RMB***)

Dear Judge Berman:

Kindly accept the following as Defendant's responding letter brief to the Government's filing on July 16, 2014 concerning the issue of victim loss and restitution.  In that the Government included a chart detailing claims on an individual basis a defense chart utilizing essentially the same format has been included. (Exhibit A)

A.  Claims accepted as made.

The defense has carefully reviewed the Government's submissions and would urge this Court to find that the restitution due Mr. Koch and Mr. Buerger, amount to $2,106,486.27 and $192,254.00 respectively.  Each of these claimants has clearly set forth their claim in a manner sufficient to satisfy the Government's burden of proof of the loss by a preponderance of the evidence.  *United States v. Martinez*, 525 F.3d 211 (2d Cir.2007).  Further, Defendant had previously agreed to refund $1,500,000 to Mr. Devine and agrees that that figure be included as an award of restitution as claimed.

B.  Mr. Fascitelli's claim for the full amount he paid must be adjusted.

Mr. Fascitelli claims the full amount that he paid for wines.  Yet his expert, Mr. Egan, found that only 69% of the wines he examined were counterfeit.  (See Defense submission of May 24, 2014 and Egan report attached thereto.)  Accordingly, Mr. Fascitelli's claim for restitution should be reduced to 69% of the figure that he paid, i.e., $3,795,000.  This figure includes allowing the 69% even to wines for which he paid but never received.

LAW OFFICES

WESTON, GARROU & MOONEY
A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

Hon. Richard M. Berman
Re: *U.S. v. Kurniawan 1:12-CR-376 (RMB)*
July 18, 2014
Page 2


C.  The Claims of Mr. Doyle and Mission Fine Wines are not sufficiently supported.

The claims of Mr. Doyle and Mission Fine Wines fail to meet standard of "information [which] has sufficient indicia of reliability to support its probable accuracy" *United States Sentencing Guidelines § 6A1.3 (a)*.  Although the Government has sought to bolster the claims of Mr. Doyle through the very recent provision of the Susan Twellman affidavit, the defense has not been provided with even the identification let alone the alleged "report" of the "printing expert" to which she refers.  The defense has no way, at this juncture, of addressing these claims.  Pursuant to *United States v. Martinucci*, 561 F.3d 533, 535 (2d Cir.2009) and *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir.2005) this Court may consider hearsay evidence, which this portion of the Twellman affidavit constitutes, but, the Court may only do so if the evidence is sufficiently reliable.  Boiled down to its essence the Twellman affidavit amounts to nothing more than an "unnamed someone I hired told me the wine I bought was counterfeit."  This bald conclusion is, in its present context, the hornbook definition of unreliable hearsay.  It is utterly beyond the ability of the defense to even assess let alone challenge such statements.  At present no one other than Ms. Twellman knows anything about the alleged "printing expert".  In point of fact we don't even know his/her name, much less what his qualifications are and how, if at all, such qualifications render him sufficiently "expert" to render an opinion as to the authenticity of rare bottles of wine.  One must seriously question whether this, or any other Court, could find that such opinion would survive a Daubert hearing.

Additionally, while Mr. Doyle provides a list of wines claimed to be counterfeit the amount he paid for these wines is not provided, rather, he improperly seeks an award for the **present day value** of the wine if they were genuine.  Accordingly, prior to any consideration of loss or restitution involving Mr. Doyle, a *Fatico* hearing must be held.

Mission Fine Wine has claimed a $3,000,000 loss.  Once again this claim lacks "sufficient indicia of reliability to support its probable accuracy" and accordingly should not be included in either loss calculation or restitution order.  There has never been a list of the wines upon which this claim is based.  Further, the wines that have been identified have been examined by several experts of the claimant's, or its predecessors choosing, and these experts came to varying conclusions, some of which supported a finding that many of the wines were genuine.  One of the producers (Domaine Romanee Conti, Mr. Aubert de Villane) was equivocal at best with regard to whether the ten bottles he was shown were genuine.

Mr. de Villaine in an email dated April 5, 2012 also casts doubt on the methodology utilized by many individuals to declare bottles to be counterfeit.  He states that contrary to the opinion held by certain people such as Mr. Don Cornwell that "any discrepancy means a fake bottle, [this] is far from always right.  Often in the past there were several label printings for the same wine of the same vintage and of course some discrepancies happened at that time."

LAW OFFICES

# WESTON, GARROU & MOONEY
A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

Hon. Richard M. Berman
Re: *U.S. v. Kurniawan 1:12-CR-376 (RMB)*
July 18, 2014
Page 3

In another email from Mr. de Villaine dated May 31, 2012, Mr. de Villaine stated "It is obvious that many of these bottles have been re-labeled, but even if the labeling is not the original one, nothing allows us to assert that the wine in the bottles or in the magnums is not original." (See Defense filing of May 24, 2014, Exhibit C2.)

By the Government's own admission, the wines involved here went through the hands of at least three other companies before being acquired by Mission. These companies were Vanquish, Cep'age, and Oakwood Advisors. Several of the bottles were examined on behalf of Oakwood Advisors by expert Geoffrey Troy and according to his report dated July 29, 2011 only two of the bottles he examined were counterfeit. (See Defense filing of May 24, 2014, Exhibit C1.)

From this divergent, incomplete, and inconclusive data the claimant seeks $3,000,000 in loss and restitution. This contention, based on the evidence submitted to date, does not meet the preponderance standard and therefore the claim should either be disallowed or a *Fatico* hearing ordered.

    D.  Claims that include payment for wine not received.

The claims of Mr. Fascitelli and Mr. Hobson, present issues that must be resolved by this Court because of what the defense believes to be errors on the part of the Government in the loss calculation. Monies paid by Mr. Fascitelli and Mr. Hobson for wine not delivered are properly part of a calculation of restitution but should be excluded from the loss calculation for sentencing purposes.

The Court must calculate loss for the purposes of sentencing but must also separately determine appropriate restitution to victims. Included in the loss calculations are two claims for restitution that include wine that was paid for but never received. These two claims are Mr. Fascitelli and Mr. Hobson. They paid $684,000 (Fascitelli) and $552,531.28 (Hobson) for product that was never delivered in any form. While Mr. Kurniawan acknowledges that he owes these gentlemen this money and that it may be appropriately included within the order for restitution it should not be included in calculation of loss for the purposes of sentencing.

In sentencing, the court's interest is fixing an appropriate punishment for the crime. *See U.S. v. Hernandez*, 2009 WL 113267 (D. Conn. Jan. 15, 2009). In this matter, it is not appropriate to include, as a loss, the wine that Mr. Fascitelli and Mr. Hobson paid for but never received.

Mr. Kurniawan was convicted of mail fraud based solely on evidence that he produced and sold fraudulent, or otherwise counterfeit, bottles of wine to multiple victims. No portion of this charge alleged that he defrauded anyone by selling them wine that he did not intend to deliver. Indeed, any allegation of any failure to deliver is not relevant conduct for sentencing

Hon. Richard M. Berman
Re: *U.S. v. Kurniawan 1:12-CR-376 (RMB)*
July 18, 2014
Page 4

purposes.

The Sentencing Guidelines § 1B1.3(a)(1)(A) entitled, "Relevant Conduct" (Factors that Determine the Guidelines Range)" provides:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ...

> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

The court in *U.S. v. Wernick*, 691 F.3d 108 (2d Cir. 2012) explains "relevant conduct" for purposes of sentencing. In *Wernick*, the court concluded that the sentencing court erred in including defendant's uncharged sex acts against young children as "relevant conduct" in calculating the defendant's offense level for the charge of persuading, inducing, and enticing teenagers to engage in sexual activities. "The words 'relevant conduct' suggest [that] more is required than mere temporal proximity, as the other conduct must be 'relevant' and it must occur 'during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Wernick*, 691 F.3d at 115. "One criminal act does not become "relevant" to a second act under the Guidelines by the bare fact of temporal overlap." *Id.*

The *Wernick* court concluded, "[a]t sentencing, the question is whether the abuse of the young children is relevant conduct to what the government *did* prove, that is to "the offense of conviction," U.S.S.G. § 1B1.3, which is the abuse of the two teenagers." (emphasis in original). While the conduct was similar, and committed in temporal proximity, it was not "relevant conduct".

In the instant matter, Mr. Kurniawan's failure to provide promised wines to Mr. Fascitelli and Mr. Hobson, even if believed to be based upon improper motive, is not "relevant conduct" to the charged crime of selling fraudulent or counterfeit wines. There are similarities. However, the conduct here is even less similar than the conduct at issue in *Wernick* and mere temporal proximity is insufficient. Allegations of failure to deliver purchased wines amount to mere issues of contract and are not properly considered in the sentencing phase of this matter.

Because Mr. Kurniawan agrees that he owes this money he does not object to including these

LAW OFFICES

WESTON, GARROU & MOONEY
A PARTNERSHIP OF PROFESSIONAL BUSINESS ENTITIES

Hon. Richard M. Berman
Re:  *U.S. v. Kurniawan 1:12-CR-376 (RMB)*
July 18, 2014
Page 5


sums in restitution.

 E.  Conclusion

When thousands of dollars are paid for individual bottles of wine it is not unreasonable to expect the purchaser to support a claim for restitution with the identification of those bottles, the price paid, and the basis for believing that the bottle is counterfeit.  While many of the claims made are sufficiently supported to justify an award, at least several include vague and confusing descriptions.  These later claims are not sufficient to allow their inclusion at this time.

    Very truly yours,

    WESTON, GARROU & MOONEY

     / s /

   By

     JEROME H. MOONEY, III
     Email:  JerryM@mooneylaw.com

JHM:km
cc: Stanley J. Okula, Jr., Esq.

*K:\0-ATTYS\JHM\Clients\Kurniawan\U.S. v. Kurniawan\Court communication\2014\Ltr to Judge Berman 07.18.2014.docx*