United States v. Kurniawan 12 Cr. 376 (RMB)

| Name | Dates and Amounts of Purported Losses Claimed by Government | Defendant's Proposed Loss | Defendant's position |
|---|---|---|---|
| David Doyle | ~$15.111 million<br><br>09/06/03 thru 04/13/07 | Loss Established<br><br>$0 | Mr. Doyle claims to have purchased just in excess of $15 Million in wine from Mr. Kurniawan and another $1 Million through auctions.<br><br>Ms. Twellman submitted an affidavit that in 2012 after Mr. Kurniawan's arrest she had ALL wine purchased from Mr. Kurniawan "quarantined". She further claims that 1807 bottles from the segregated wines were examined by an unnamed expert and determined to be counterfeit.<br><br>An inventory of those 1807 wine bottles is provided in two exhibits, however the amount paid for those bottles has not been provided. Instead, the exhibits claim a "current value".<br><br>Mr. Doyles submission is insufficient. Before Mr. Doyles claim for restitution can be credited the defense is entitled to the identification of the expert and any reports that he may have prepared. In addition the inventory must be redone to reflect not what Mr. Doyle might think the bottles may be worth today, but what he in fact paid for them. |
| Michael Fascitelli | $5,500,000<br><br>09/28/06 thru March/April 2008 | $3,795,000 Restitution<br><br>$3,323,000 Loss<br><br>69% of the purchase price based upon Egan evaluation | Mr. Fascitelli paid a total of $5,500,000 for the purchase of wine. The Government is asking for restitution of every penny that Mr. Fascitelli paid to Mr. Kurniawan for wine. This is not appropriate for two reasons. The expert who examined Mr. Fascitelli's wine found that 69% of the product purchased from Mr. Kurniawan was probably counterfeit. (See Egan report in Defense filing May 24, 2014.)<br><br>He never received $684,000 of the wine he paid for.<br><br>Mr. Fascitelli paid for and received $4,816,000 in wine. Assuming that the same 69% ratio found by Mr. Egan's evaluation would have held true on the undelivered product 69% of the total amount paid would be $3,795,000 which is appropriate for restitution.<br><br>However, for loss purposes, however, the 69% should only be applied to the wine actually received. |

United States v. Kurniawan 12 Cr. 376 (RMB)

| | | | |
|---|---|---|---|
| Mission Fine Wines | ~$3,000,000<br><br>July 2011 (from Vanquish, which had purchased from the defendant) | Loss Established $0 | In July 2011 a number of wines were sold through Richard Brierly to an undisclosed buyer of Mission Fine Wines. Geoff Troy was hired to inspect the sale. Two bottles of the wine were questioned and withdrawn from the transaction. Mr. Troy did approve many of the wines. (See May 24, 2014 filing, Exhibit C1)<br><br>As of 2012 Mission was reporting that the wines purchased by their buyer were still in the buyer's possession. Because of articles written by Mr. Cornwell questioning labels 10 bottles of wine were sent to the Chateau for further review. (See May 24, 2014 filing, Exhibit C2)<br><br>Mr. de Villaine's response on behalf of the chateau and raised a few questions but was mostly equivocal with respect to the bottles.<br><br>It is of note that Mr. de Villaine clarified that Mr. Cornwell's branding of bottles as being fake because of variations in printing is not correct as different labels with different fonts often were used on the bottles. *Id.*<br><br>Mr. Brierly then opened Spectrum. At least some, if not all of the wines ended up as a part of the Spectrum auction in 2012.<br><br>This claim has not been established. |
| William Koch | $2,100,000<br><br>4/26/05 thru 01/26/06 | $2,106,486 | Should be $2,106,486<br><br>Mr. Koch prepared an inventory listing counterfeit wines. The defense accepts Mr. Koch's inventory of counterfeit wines.<br><br>Mr. Koch has entered into a separate settlement agreement with the auction house through which he purchased the wines. |

| | | | |
|---|---|---|---|
| Brian Devine | $1,500,000<br><br>02/26/03 thru 07/20/2005 | $1,500,000 | Mr. Devine purchased wine indirectly from Rudy. While some of these wines were probably counterfeit a large number were not. Mr. Kurniawan agreed to refund the $1,500,000 to Mr. Devine prior to the filing of the instant matter.<br><br>Rudy does not object to the inclusion of this figure in restitution. |
| Andrew Hobson | $3,118,856<br><br>October 2002 thru October 2007 | $1,397,897 Restitution<br><br>$ 845,366 Loss | This claim includes $552,531 for the purchase of wine that was never received (which could not have been counterfeit).  If that is deducted from the total paid the balance is $2,988,932. That alone would reduce the **loss** to $2,566,325.<br><br>Further, the expert report does not support the claim.  The Defense created a spreadsheet that compares the expert report to the wine purchased. Even though there is not always a perfect match credit was given for everything identified in some fashion in the report.  It comes to a total of $883,336.66.  This included "cannot authenticate" and "unable to authenticate".  A further category of "no decision at this time" should not be included and should be deducted.  (See Exhibit B)<br><br>This leaves a balance of $845,366.66 for Mr. Hobson for the purposes of loss.<br><br>Defendant has added back the sums paid for wine not received to reach a figure of restitution of $1,397,897. |

United States v. Kurniawan 12 Cr. 376 (RMB)

| | | | |
|---|---|---|---|
| Reid Buerger | $192,254<br><br>(plus $55,424)<br><br>October 2006 | $192,254 | Mr. Buerger has provided a list of the $192,254 in bottles that he purchased.<br><br>The defense accepts this inventory. |